**STONE & MAGNANINI LLP**
David S. Stone (*Pro Hac Vice* Application Forthcoming)
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel: (973) 218-1111
Fax: (973) 218-1106

**EPSTEIN DRANGEL LLP**
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower St., Suite 1000
Los Angeles, California 90017
Telephone: (310) 356-4668
Facsimile: (310) 388-1232

*Attorneys for Plaintiff*
*Telebrands Corp.*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELEBRANDS CORP.,<br><br>Plaintiff,<br><br>v.<br><br>VINDEX SOLUTIONS LLC, CORNERSTONE TRADING LLC, GLORIA BUSINESS, INC., TECHNO ZONE, LLC, OKAPI, LLC, HENAN DERUN NEW MATERIAL TECHNOLOGY CO, LTD., SHEN ZHEN HEI SHI INVESTMENT LTD., and XNH US,<br><br>Defendant. | CASE NO.:<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1.    VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET SEQ.*)<br>2.    VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201 ET SEQ.)<br>3.    VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW 73 PA. STAT. ANN. § 201-1 *ET SEQ*<br>4.    VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW 73 PA. STAT. ANN. § 201-1 *ET SEQ.*<br>5.    VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT, COLO. REV. STAT. § 6-1-101 |

COMPLAINT

1    Plaintiff Telebrands Corp. ("Telebrands") for its Complaint against Defendants VindEx
2    Solutions LLC, Cornerstone Trading LLC, Gloria Business, Inc., Techno Zone, LLC, Okapi, LLC,
3    Henan Derun New Material Technology Co., Ltd., Shen Zhen Hei Shi Investment Ltd., and XNH US
4    (collectively "Defendants"), alleges as follows:

5                                **NATURE OF THE ACTION**

6        1.      This is an action seeking a temporary restraining order, an expedited hearing for a
7    preliminary injunction and expedited discovery, and ultimately a permanent injunction, enjoining
8    Defendants from marketing and distributing transcutaneous electrical nerve stimulation ("TENS")
9    units for which Defendants have neither sought nor obtained the proper clearance from the United
10   States Food and Drug Administration ("FDA") pursuant to Section 510(k) of the Food Drug and
11   Cosmetic Act, 21 U.S.C. § 301, *et seq*. (the "FDCA")

12       2.      Plaintiff Telebrands is an award-winning, global direct response company that designs,
13   markets and promotes a wide variety of innovative consumer products.  Among those products is the
14   Hempvana Rocket, a portable, handheld TENS unit.  Specifically, the Hempvana Rocket is a pain-
15   relieving pen that uses TENS therapy in the form of direct electrical stimulation to muscles to achieve
16   temporary relief of pain associated with sore and aching muscles in the user's back, knees, shoulders,
17   hips, neck and elsewhere.

18       3.      Regulations promulgated by the FDA classify all TENS units as Class II medical
19   devices.  All Class II medical devices require submission and clearance of a 510(k) premarket
20   notification before they can be lawfully distributed within the United States.

21       4.      On November 19, 2020, Telebrands entered into a license agreement with Healthcare
22   Innovations LLC, who had obtained 510(k) premarket clearance from the FDA, permitting the
23   Licensor (and therefore its licensee, Telebrands) to begin distributing the product which would
24   eventually become the Hempvana Rocket within the United States.

25       5.      The Hempvana Rocket is available for direct purchase by consumers on Telebrands'
26   proprietary website, https://hempvanarocket.com, where it is sold nationally, including in the States of
27   California, Florida, Pennsylvania, Delaware and Colorado. Telebrands has also launched the
28   Hempvana Rocket for sale on various national third-party marketplaces, such as Amazon and

-1-                                                    Case No.
COMPLAINT

1   Facebook.  Amazon distributes the Hempvana Rocket nationally, including in the States of California,

2   Florida, Pennsylvania, Delaware and Colorado.

3       6.      Defendants' TENS units have not received 510(k) premarket clearance from the FDA,

4   and therefore cannot be lawfully distributed within the United States.  Despite the lack of clearance

5   from the FDA, Defendants have been engaged in the unlawful business practice of distributing their

6   TENS units through third-party marketplaces such as Amazon and Facebook.

7       7.      As of the third-party marketplace release of the Hempvana Rocket, due to, for example,

8   the Amazon search assistance feature that recommends alternative products similar to the product the

9   consumer is currently viewing, Telebrands has seen that Defendants' uncleared, competing TENS units

10  are piggybacking off of the popularity of the Hempvana Rocket and have experienced increased

11  visibility on Amazon as a similar product.  As a result, Telebrands will inevitably face substantial

12  competition from Defendants' TENS units, despite the fact that they cannot be lawfully distributed

13  within the United States.

14      8.      Defendants' unlawful business practices pose irreparable harm to Telebrands in two

15  separate ways.  First, by unlawfully distributing the competing TENS units without first obtaining

16  clearance through an FDA 510(k) premarket notification, Defendants received an unfair advantage.

17  Defendants have avoided the costs of seeking proper clearance from the FDA.  However, not only are

18  Defendants distributing their TENS units nationally, they have the benefit of the Hempvana Rocket's

19  popularity to boost their products' visibility, which they will use unfairly and unlawfully to compete

20  against Telebrands and dilute the market for TENS units when no such competition is permitted to

21  occur pursuant to FDA regulations.  In short, Defendants get to cut to the front of the line, without

22  incurring the time and expense required to properly – and safely – sell a TENS unit in the United

23  States.  Second, this unlawful, unfair competition will undoubtedly result in dilution of the market, and

24  loss of an entire swath of customers, the amount of whom Telebrands simply will be unable to

25  quantify.

26      9.      In addition, the advertising and marketing materials for Defendants' TENS units omit

27  the fact that none of the Defendants have sought and obtained 510(k) premarket notification clearance

28  from the FDA.  That failure to properly inform consumers creates a substantial likelihood that

-2-                                              Case No.

COMPLAINT

consumers, who would have otherwise forgone purchasing Defendants' TENS units due to the lack of FDA clearance, will be confused or misled into purchasing Defendants' TENS units believing them to be equivalent to the Hempvana Rocket.

10.     Based on the foregoing, Telebrands seeks a temporary restraining order to enjoin Defendants from continuing to unlawfully distribute their unauthorized TENS units through third party marketplaces such as Amazon, telephonically, or in-person within the United States to prevent the extensive, irreparable harm which Telebrands will suffer if such conduct is not immediately halted.

11.     Following issuance of the temporary restraining order, Telebrands will also seek an immediate hearing on the issuance of a preliminary injunction, and ultimately a permanent injunction enforcing the same injunctive relief.

12.     Telebrands also requests that the Court enter an order granting limited expedited discovery in this matter.

## THE PARTIES

13.     Telebrands Corp. is a corporation organized and existing under the laws of the State of New Jersey, having a place of business at 79 Two Bridges Road, Fairfield, New Jersey 07004. Telebrands, through its national retail distributors and the company's website and online platforms, conducts business throughout the United States, including in the States of California, Florida, Pennsylvania, Delaware and Colorado.

14.     Defendant VindEx Solutions LLC ("VindEx") is a corporation organized and existing under the laws of the Commonwealth of Virginia and having a principal place of business at 3312 Wyndale Court., Woodbridge, Virginia 22192.  VindEx, through its online promotion of its product, conducts business throughout the United States, including in the States of California, Florida, Pennsylvania, Delaware and Colorado.

15.     Defendant Cornerstone Trading LLC ("Cornerstone") is a corporation organized and existing under the laws of the State of California and having a principal place of business at 303 N. Glenoaks Boulevard, Suite 200, Burbank, California 91502.  Cornerstone, through its online promotion of its product, conducts business throughout the United States, including in the States of California, Florida, Pennsylvania, Delaware and Colorado.

Case No.

COMPLAINT

16.     Defendant Gloria Business Inc. ("Gloria") is a corporation organized and existing under the laws of the State of Illinois and having a principal place of business at 2501 Chatham Road, Suite N, Chicago, Illinois 62704.  Gloria, through its online promotion of its product, conducts business throughout the United States, including in the States of California, Florida, Pennsylvania, Delaware and Colorado.

17.     Defendant Techno Zone LLC ("Techno Zone") is a corporation organized and existing under the laws of the State of Texas and having a principal place of business at 2500 Wilcrest Drive, Suite 300, Houston, Texas 77042.  Techno Zone, through its online promotion of its product, conducts business throughout the United States, including in the States of California, Florida, Pennsylvania, Delaware and Colorado.

18.     Defendant Okapi, LLC ("Okapi") is the owner of the registered trademark, "Fortivo." Okapi's residence is located at 6N580 Promontory Court, St. Charles, Illinois 60175.  Okapi, through his online promotion of product through the trademark "Fortivo," conducts business throughout the United States, including in the States of California, Florida, Pennsylvania, Delaware, and Colorado.

19.     Defendant Henan Derun New Material Technology Co., Ltd. ("Henan Derun") is a foreign corporation organized and existing under the laws of the Republic of China, and, upon information and belief, has a principal place of business located at No. 246 Kaizhou Road, Hualong District, Puyang, Henan, China 457000.  Henan Derun, through its online promotion of its product, conducts business throughout the United States, including in the States of California, Florida, Pennsylvania, Delaware and Colorado.

20.     Defendant Shen Zhen Hei Shi Investment LTD. ("Shi Investment") is a foreign corporation organized and existing under the laws of the Republic of China, and, upon information and belief, has a principal place of business located at Qianhai No. 1 Street 1, Building A, 201 Room, Shenzhen, Guangdong, China 518052.  Shi Investment, through its online promotion of its product, conducts business throughout the United States, including in the States of California, Florida, Pennsylvania, Delaware and Colorado.

21.     Defendant XNH US ("XNH") is a foreign corporation organized and existing under the laws of the Republic of China, and, upon information and belief, has a principal place of business

located at Longyuanshequlongfalu 428A3 Dong 2 Danyuan 1702, Longhuaqualonghuajiedao, Shenzhen, Guangdong, China 518000.   XNH, through its online promotion of its product, conducts business throughout the United States, including in the States of California, Florida, Pennsylvania, Delaware and Colorado.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the adverse parties are domiciled in New Jersey (Telebrands), Texas (Techno Zone), Illinois (Okapi and Gloria), California (Cornerstone), Virginia (VindEx), and China (Henan Derun, Shi Investment and XNH). Both Telebrands' and Defendants' products are sold nationwide, including in the State of California, and the amount in controversy exceeds $75,000.00.

23.     This Court has personal jurisdiction over Defendants because they have engaged in the unlawful marketing, soliciting and selling of their TENS units to customers in the State of California.

24.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

## INTRADISTRICT ASSIGNMENT

25.     This lawsuit should be assigned to the San Jose Division of this Court because a substantial part of the events or omissions which give rise to this lawsuit occurred in Santa Clara County.   Specifically, Amazon, a third-party marketplace which distributes products throughout the United States and globally, has a fulfillment and distribution center located at 1710 Little Orchard Street, San Jose, California, which, upon information and belief, has within its inventory, and distributes within the United States, Defendants' uncleared TENS units.

## FACTS

### Regulatory Structure

26.     Section 201(h) of the FDCA defines a medical device as "an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is: (A) recognized in the National Formulary, or the United States Pharmacopeia, or any supplement to them, (B) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or (C) intended to affect the structure of any function of the body of man or other animals,

Case No.

1   and which does not achieve its primary intended purposes through chemical action within or on the

2   body of man or other animals and which is not dependent upon being metabolized for the achievement

3   of its primary intended purposes." 21 U.S.C. § 321.

4       27.    If a determination is made that a product meets the definition of a "medical device,"

5   additional analysis is necessary to determine which of three classifications is appropriate for the

6   device, which vary based on the perceived level of risk associated with the device.  Class I devices

7   pose the lowest risk, while Class III devices pose the highest level of risk.  Due to the differing levels

8   of risk, each classification has its own regulations and requirements before distribution in the United

9   States is permitted.

10      28.    Class I Devices are subject to a set of general controls which are applicable to all

11  classes of devices.  General controls may include establishment registration and device listing,

12  prohibitions against adulteration and misbranding, keeping of records and reports, and Current Good

13  Manufacturing Practices. 21 U.S.C. 360c(a)(1)(A).

14      29.    Class II devices require both general controls and specific controls.  Specific controls

15  can include performance standards, post market surveillance, patient registries, development of

16  guidelines (including guidelines for the submission of clinical data). 21 U.S.C. 360c(a)(1)(B).  Class II

17  devices also require a premarket 510(k) submission, which is made to the FDA to demonstrate that the

18  subject device is "substantially equivalent" to another legally marketed device—the predicate device.

19  The term substantially equivalent means that with respect to the predicate device, the subject device

20  has the same intended use, indications for use and technological characteristics such as design,

21  materials of construction, and physical characteristics.  21 U.S.C. 360c(i)(1)(B).  In evaluating

22  substantial equivalence, the FDA generally analyzes performance data such as mechanical behavior,

23  electrical properties, sterility, biocompatibility, etc.

24      30.    For Class III devices, general controls are insufficient and there is insufficient

25  information to establish specific controls to provide reasonable assurance of their safety and

26  effectiveness. 21 U.S.C. 360c(a)(1)(C).

27

28

COMPLAINT

31.     TENS units are Class II devices, and are assigned a product code by the FDA based on the details of the product.  Because TENS units are Class II devices, they require premarket 510(k) clearance prior to their sale in the United States.

### **Telebrands' Hempvana Rocket and Defendants' Unlawful Competition**

32.     Telebrands is a leading direct television marketing company and the original creator of the "As Seen on TV" logo and category of trade.  Each of Telebrands' innovative products is designed to provide convenient solutions to everyday challenges while saving consumers time and money.

33.     Among Telebrands' innovative products is the Hempvana Rocket.  The Hempvana Rocket is a wireless, electronic stimulation TENS unit designed to relieve pain in the user.  It uses TENS technology to relieve pain associated with sore and achy muscles in the user's shoulder, waist, back, neck, arms and legs.

34.     On November 19, 2020, Telebrands entered into a license agreement with Healthcare Innovations LLC, who had obtained a 510(k) premarket clearance from the FDA, permitting the Licensor (and therefore its licensee, Telebrands) to begin distributing the product which would eventually become the Hempvana Rocket within the United States.

35.     The Hempvana Rocket, which Telebrands markets on its proprietary website, https://hempvanarocket.com, is sold nationally, including in the States of California, Florida, Pennsylvania, Delaware and Colorado. Telebrands has also launched the Hempvana Rocket for sale on various national third-party marketplaces, such as Amazon and Facebook, as well.  Amazon markets and distributes the Hempvana Rocket nationwide.

36.     Each of the Defendants has a competing product available on Amazon:

a.     Techno Zone, through its Zolaro brand, markets the Meridian Energy Acupuncture Pen within the United States.

b.     Gloria Business, through its AOBBiY brand, markets the Acupuncture Massager Pen within the United States.

c.     Cornerstone, through its BreoLife brand, markets the Electronic Acupuncture Pen within the United States.

COMPLAINT

d.     VindEx, through its Scree brand, markets the SmartChoice4U Direct product within the United States.

e.     Okapi, through its FORTIVO brand, markets the Acupuncture Massage Pen within the United States.

f.     Henan Derun, through its UniforU brand, markets the Massager Pen within the United States.

g.     Shi Investment, through its Blitzby brand, markets the 5-in-1 Acupuncture Pen within the United States.

h.     XNH, through its FOHYLOY brand, markets the Meridian Energy Acupuncture Pen within the United States.

37.     Concerned about the competition posed by Defendants' products, Telebrands sought the services of an expert to systematically examine each of Defendants' products to determine their uses and to confirm that they had obtained all the appropriate clearance from the FDA.

38.     Telebrands consulted with Exponent, Inc. to identify and document the physical, electrical and safety parameters of the Defendants devices.

39.     Exponent, Inc. began by assessing the benefits and intended uses of Defendants' devices.  What Exponent, Inc. noticed was that chief among the claims made by the Defendants in the materials marketing their devices was the focus on pain relief and the prevention of muscular atrophy by triggering rapid muscle contraction and also blocking pain signals as they travel through the nervous system to the user's brain.  All of these purported benefits are typical of handheld TENS units such as the Hempvana Rocket.

40.     Moreover, Exponent, Inc. noted that the safety precautions indicated for the Defendants' devices also aligned precisely with those of the Hempvana Rocket and other TENS units. Specifically, safety precautions called for the user to avoid using the devices if the user has a pacemaker, pulse regulator, artificial heart, lungs, or other life sustaining electronic medical devices. In addition, Defendants devices are not to be used on or near mucus membranes or bodily orifices, and users should be certain to consult with a physician before use if pregnant.

Case No.

41.     Based on its comparative analysis of Defendants' products with several FDA cleared TENS devices already available in various markets, Exponent, Inc. concluded that they were indeed TENS units.  Accordingly, Defendants needed to have obtained clearance from the FDA pursuant to a 510(k) premarket submission.

42.     Exponent, Inc. continued its analysis by conducting a comprehensive search of the FDA's establishment registration and device listing database for Defendants' products.  Establishment registration and device listings provide the FDA with the location of medical device establishments and the devices manufactured in those establishments.  The search included filtering for all available FDA product codes assigned to TENS units.  It also included a separate search for information on all FDA registered owners and operators of businesses involved in the production and distribution of medical devices for intended use in the United States.

43.     After completing its diligent and through search, Exponent, Inc. determined that not a single one of Defendants' competing TENS units was identified in the FDA database.  In short, none of the Defendants obtained the requisite FDA 510(k) clearance before distributing their TENS units nationwide.  As distributors of Class II medical devices, Defendants were under an obligation, pursuant to 21 C.F.R. § 882.5890, to obtain such clearance.

44.     Nevertheless, despite the clear requirement as promulgated in FDA regulations, Defendants all neglected to obtain the proper clearance, and have instead engaged in the unlawful business practice of distributing those TENS units nationwide using third-party marketplaces such as Amazon and Facebook.

45.     Defendants systematic scheme of unfair competition threatens to cause irreparable harm to Telebrands now that the Hempvana Rocket has been launched on third-party marketplaces.  For example, Amazon's search function provides additional assistance to users, by not only showing the particular device that the user wishes to purchase, but also editorial recommendations, similar devices, and devices that other users have previously purchased.

46.     Central to Telebrands' business model, which has seen great success in the past, is making large expenditures on advertising upon the launch of a new product.  Frequently, the advertising expenditures can total in the millions of dollars, with the purpose being to build a

COMPLAINT                                                                                          Case No.

recognizable brand for that product. That recognizable brand then solidifies Telebrands' position in the marketplace, allowing sales to grow proportionately.

47.    Unfortunately, because Defendants have already been distributing their products on third-party marketplaces without the proper clearances, and due to the enhanced search functionality of third-party marketplaces such as Amazon, Telebrands anticipates that the expenditures made to create a brand for the Hempvana Rocket will inadvertently inure to the great benefit of Defendants. Defendants will be able to piggyback off of the money spent on and popularity gained by the advertising for the Hempvana Rocket.

48.    Accordingly, Telebrands is faced with the unforeseeable hurdle of substantial unfair competition from Defendants TENS units, despite the clear prohibition against Defendants distributing them in the United States.

49.    The irreparable harm to Telebrands comes in several forms. First, Defendants receive an unfair advantage by improperly and unlawfully distributing their TENS units without first incurring the transactional cost of obtaining clearance after making a 510(k) submission. Having avoided the costs associated with 510(k) clearance, Defendants can then avail themselves of the popularity earned by the Hempvana Rocket and Telebrands as a widely known national brand, and unfairly and unlawfully compete against Telebrands, necessarily resulting in dilution of the market for handheld TENS unit.

50.    Simply put, Defendants have leapfrogged the requirements and positioned themselves at the finish line while avoiding the expense required to properly—and safely—sell a TENS unit in the United States.

51.    Indeed none of the labeling or advertising materials for Defendants' TENS units indicate that as Class II medical devices, they require 510(k) clearance, or that the Defendants all neglected to obtain such clearance. That glaring omission of a material fact creates a substantial likelihood that consumers, who otherwise would not have purchased Defendants' products due to safety concerns in using an uncleared product meant to send electrical pulses through their muscles, will be misled into purchasing Defendants' TENS units believing them to be safe and equivalent to the Hempvana Rocket.

COMPLAINT                                                                    Case No.

52.     That harm will lead to the second, more grave harm, which is the dilution of the market and a precipitous loss of consumers, the amount of which Telebrands simply cannot quantify.

53.     Customers who have already purchased Defendants' TENS units are unlikely to purchase the Hempvana Rocket.  Indeed, consumers who purchased Defendants' TENS units will likely never learn of the fact that Defendants' TENS units never received the proper clearance.

54.     Due to the threat of continued irreparable harm, Telebrands seeks a temporary restraining order to enjoin Defendants from continuing to unlawfully distribute their unauthorized TENS units through third party marketplaces such as Amazon, telephonically, in retail stores or any other medium within the United States to prevent the extensive, irreparable harm which Telebrands will suffer if such conduct is not immediately halted.

55.     Following issuance of the temporary restraining order, Telebrands will also seek an immediate hearing on the issuance of a preliminary injunction, and ultimately a permanent injunction enforcing the same injunctive relief.

## FIRST CAUSE OF ACTION

### (UNFAIR COMPETITION IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET SEQ.*)

56.     Telebrands incorporates the allegations in the preceding paragraphs as if fully set forth herein.

57.     California's Business and Professions Code section 17200, *et seq.* ("UCL") prohibits any unlawful, unfair or fraudulent business act or practice, any unfair, deceptive, untrue or misleading advertising, and any violation of Business and Professions Code section 17500, *et seq.*

58.     Defendants failed to obtain FDA clearance in the form of a 510(k) premarket notification which would permit their TENS unit, a Class II device requiring clearance pursuant to 21 C.F.R. § 882.5890, to be lawfully distributed within the United States.

59.     Defendants are  violating the UCL by engaging in the unlawful business practice of offering their TENS units in competition with Telebrands by advertising and distributing them nationwide, and throughout the State of California, through third party marketplaces such as Amazon

COMPLAINT

and other online purchasing platforms, despite failing to obtain the required 510(k) premarket notification.

60.     As a result of Defendants' violation of the UCL, Telebrands will suffer irreparable harm to its business.  Telebrands faces irreparable harm in the form of a significant customer loss and a drop to its percentage of the market for portable, handheld TENS units due to Defendants' conduct, despite the fact that Defendants are not permitted to distribute their competing TENS units in the United States under the law.  .

### SECOND CAUSE OF ACTION

### (VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201 ET SEQ.)

61.     Telebrands incorporates the allegations in the preceding paragraphs as if fully set forth herein.

62.     Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")  declares to be unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.24(1).  The provisions of FDUTPA are to be liberally construed to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts and practices in the conduct of any trade or commerce.  Fla. Stat. § 501.202(2).

63.     An act is unfair under FDUTPA when it offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

64.     Violations of any law, statute, rule or regulation that proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices constitute *per se* violations of FDUTPA.  Fla. Stat. § 501.203(3)(c).

65.     Defendants have violated FDUTPA by employing business practices and taking actions (as described above) that violate statutes designed to protect public welfare, including 21 U.S.C. § 301 *et seq.*

66.     Defendants are and have been engaged in trade and commerce in the State of Florida, and have sought to specifically harm Florida consumers in the execution of their unfair business practices.

67.     Purchasers of Defendants TENS unit are consumers under FDUPTA. *See* Fla. Stat. § 501.203(7).

68.     Defendants' unlawful business practices have harmed both consumers and Telebrands in multiple ways.

69.     By distributing their TENS units nationwide without first seeking and obtaining clearance from the FDA in the form of a 510(k) premarket notification, Defendants have been unlawfully and unfairly soliciting and distributing an unauthorized product.  As a result, Defendants have been able to effectively cut the line and compete with Telebrands in the market for consumer TENS units and will dilute Telebrands' share of said market, despite knowingly failing to seek the necessary clearance.

70.     As a consequence of Defendants' unlawful business practices, unsuspecting consumers have been purchasing, and will continue to purchase, Defendants' TENS units, despite those devices failing to be cleared for commercial use by the FDA.  Defendants are distributing TENS units that they legally are not permitted to distribute.

71.     Defendants' unfair business practices offend public policy and have harmed Telebrands and consumers by injecting into a market a device that has not received the proper clearance, while subsequently drawing consumers away from Telebrands' Hempvana Rocket, a device properly cleared for distribution, and misleading consumers into purchasing TENS units that they thought were equivalent the Hempvana Rocket..

72.     By virtue of Defendants' unfair and unlawful business practices, and consistent with the provisions of Fla. Stat. § 501.211, Telebrands seeks injunctive relief to prevent Defendants from continuing to engage in their unlawful conduct which will result in irreparable harm to Telebrands as well as consumers.

Case No.

COMPLAINT

**THIRD CAUSE OF ACTION**

**(VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW 73 PA. STAT. ANN. § 201-1 *ET SEQ.*)**

73.     Telebrands incorporates the allegations in the preceding paragraphs as if fully set forth herein.

74.     Conduct amounts to an unfair method of competition under the Pennsylvania Unfair Trade Practices and Consumer Protection Law if it causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification for goods or services.  73 Pa. Stat. Ann. § 201-2(4)(ii).

75.     As set forth in the allegations contained in the preceding paragraphs, the FDA has mandated, pursuant to 21 C.F.R. § 882.5890, that all entities offering Class II medical devices, including TENS units, must first obtain clearance in the form of a 510(k) premarket notification prior to distribution within the United States.

76.     While Telebrands' licensor sought and obtained its 510(k) premarket clearance notification prior to distributing the Hempvana Rocket, Defendants have not done the same.

77.     Nevertheless, Defendants have and will continue to distribute their competing TENS units throughout the United States, and the State of Pennsylvania, despite failing to secure the proper FDA clearance.

78.     Defendants' TENS units remain available for consumer purchase on third-party marketplaces such as Amazon and Facebook despite not having the proper FDA clearance.

79.     By virtue of Defendants' knowing failure to obtain the proper FDA clearance, and failure to inform consumers of that failure, consumers of Defendants' TENS units are likely to be confused or misled as to the FDA's clearance of those TENS units, making purchases that they would not otherwise have made had they known of Defendants' failure to obtain a 510(k) premarket clearance.

80.     As a result, not only are those consumers purchasing a product that they otherwise would not have purchased, Defendants are also diluting Telebrands' legitimate share of the market on TENS units by creating competition that should not exist.

81.     In order to address Defendants' unfair business practices, Telebrands seeks injunctive relief to prevent Defendants from continuing to engage in their unlawful conduct which will result in irreparable harm to Telebrands as well as consumers.

## FOURTH CAUSE OF ACTION

### (VIOLATION OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT, 6 DEL. C. § 2531 *ET SEQ.*)

82.     Telebrands incorporates the allegations in the preceding paragraphs as if fully set forth herein.

83.     Conduct amounts to an unfair method of competition under the Delaware Deceptive Trade Practices Act  if it causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification for goods or services.  6 Del. C. § 2532.

84.     As set forth in the allegations contained in the preceding paragraphs, the FDA has mandated, pursuant to 21 C.F.R. § 882.5890, that all entities offering Class II medical devices, including TENS units, must first obtain clearance in the form of a 510(k) premarket notification prior to distribution within the United States.

85.     While Telebrands' licensor sought and obtained its 510(k) premarket clearance notification prior to distributing the Hempvana Rocket, Defendants have not done the same.

86.     Nevertheless, Defendants have and will continue to distribute their competing TENS units throughout the United States, and the State of Delaware, despite failing to secure the proper FDA clearance.

87.     Defendants' TENS units remain available for consumer purchase on third-party marketplaces such as Amazon and Facebook despite not having the proper FDA clearance.

88.     By virtue of Defendants' knowing failure to obtain the proper FDA clearance, and failure to inform consumers of that failure, consumers of Defendants' TENS units are likely to be confused or misled as to the FDA's clearance of those TENS units, making purchases that they would not otherwise have made had they known of Defendants' failure to obtain a 510(k) premarket clearance.

Case No.

COMPLAINT

89.     As a result, not only are those consumers purchasing a product that they otherwise would not have purchased, Defendants are also diluting Telebrands' legitimate share of the market on TENS units by creating competition that should not exist.

90.     In order to address Defendants' unfair business practices, Telebrands seeks injunctive relief to prevent Defendants from continuing to engage in their unlawful conduct which will result in irreparable harm to Telebrands as well as consumers.

**FIFTH CAUSE OF ACTION**

**(VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT, COLO. REV. STAT. § 6-1-101)**

91.     Telebrands incorporates the allegations in the preceding paragraphs as if fully set forth herein.

92.     The Colorado Consumer Protection Act designates as an unfair or deceptive trade practice where a person, when engaging in the person's business, vocation, or occupation, refuses or fails to obtain all government licenses or permits required to perform the services or to sell the goods. Colo. Rev. Stat. § 6-1-105.  A "person" is defined as "an individual corporation, business trust, estate, trust, partnership, unincorporated association, or two or more thereof having a joint or common interest, or any other legal or commercial entity."  Colo. Rev. Stat. § 6-1-102(6).

93.     As set forth in the allegations contained in the preceding paragraphs, the FDA has mandated, pursuant to 21 C.F.R. § 882.5890, that all entities offering Class II medical devices, including TENS units, must first obtain clearance in the form of a 510(k) premarket notification prior to distribution within the United States.

94.     Defendants failed to obtain FDA clearance in the form of a 510(k) premarket notification which would permit their TENS unit, a Class II device requiring clearance pursuant to 21 C.F.R. § 882.5890, to be lawfully distributed within the United States.

95.     Defendants are  violating the Colorado Consumer Protection Act by engaging in the unlawful business practice of offering their TENS units in competition with Telebrands by advertising and distributing them nationwide, and throughout the State of Colorado, through third party

COMPLAINT

marketplaces such as Amazon and other online purchasing platforms, despite failing to obtain the required 510(k) premarket notification.

96.    As a result of Defendants' violation of the Colorado Consumer Protection act, Telebrands will suffer irreparable harm to its business.  Telebrands faces irreparable harm in the form of a significant loss of consumers and a drop to its percentage of the market for portable, handheld TENS units due to Defendants' conduct, despite the fact that Defendants are not permitted to distribute their competing TENS units in the United States under the law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Telebrands respectfully requests the Court order the following relief:

A.    A temporary restraining order to remain in place until the date of the hearing of for the preliminary injunction:

    a.    Restraining and enjoining Defendants, and all those acting in concert or participation with Defendants, from directly or indirectly continuing to lawfully distribute Defendants' uncleareded TENS units through third party marketplaces such as Amazon, or any person or entity acting in concert with Defendants, from continuing to unlawfully distribute Defendants' uncleared TENS units through third-party marketplaces such as Amazon, in retail stores or through any other medium within the United States;

    b.    Restraining and enjoining Defendants, and all those acting in concert or participation with Defendants, from destroying, erasing or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer files or other electronic storage media) in Defendants' possession or control which relate to Defendants' uncleared TENS units.

B.    An immediate hearing, pursuant to Federal Rule of Civil Procedure 65 to determine whether to issue a preliminary injunction and/or a permanent injunction:

    a.    Restraining and enjoining Defendants, and all those acting in concert or participation with Defendants, from directly or indirectly continuing to lawfully distribute Defendants' uncleared TENS units through third party marketplaces such as Amazon, or any person or entity acting in concert with Defendants, from continuing to unlawfully

1    distribute Defendants' uncleared TENS units through third-party marketplaces such as

2    Amazon, in retail stores or through any other medium within the United States;

3        b.   Restraining and enjoining Defendants, and all those acting in concert or participation

4    with Defendants, from destroying, erasing or otherwise making unavailable for further

5    proceedings in this matter, any records or documents (including data or information

6    maintained in computer files or other electronic storage media) in Defendants'

7    possession or control which relate to Defendants' unauthorized TENS units.

8        C.     An order directing the parties to immediately commence limited expedited discovery;

9        D.     An Order compelling Defendants and all those acting in concert or participation with

10   Defendants to preserve all documents, data, tangible things, and other materials relating to this case,

11   including, without limitation, emails, data databases, cloud storage, and paper and electronic data and

12   documents, including any and all metadata, and to take all steps necessary to do so; and

13       E.     An Order authorizing bifurcated and alternative service of process

14       F.     Ordering such other and further relief as this court may deem just and proper.

15

16   DATED: February 4, 2021          **STONE & MAGNANINI LLP**

17                             David S. Stone, *pro hac vice forthcoming*

18                       **EPSTEIN DRANGEL LLP**

19                       By:    s/ Peter J. Farnese

20                              Peter J. Farnese

21                       *Attorneys for Plaintiff*
                       *Telebrands Corp.*

22

23

24

25

26

27

28

          Case No.

COMPLAINT

## <u>VERIFICATION</u>

I, Bala Iyer, declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge with the exception of legal contentions asserted by my attorney.

Executed this 3rd day of February, 2021, at Sparta, New Jersey.


_____

Bala Iyer

1