1

2

3

**STONE & MAGNANINI LLP**
David S. Stone (*Pro Hac Vice* Application Forthcoming)
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel: (973) 218-1111
Fax: (973) 218-1106

4

5

6

7

**EPSTEIN DRANGEL LLP**
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower St., Suite 1000
Los Angeles, California 90017
Telephone: (310) 356-4668
Facsimile: (310) 388-1232

8

*Attorneys for Plaintiff*
*Telebrands Corp.*

9

10

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

| | |
|---|---|
| TELEBRANDS CORP., | CASE NO.:  5:21-cv-00898 |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, FOR AN ORDER GRANTING LEAVE TO CONDUCT EXPEDITED DISCOVERY AND FOR AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS** |
| v. | |
| VINDEX SOLUTIONS LLC, CORNERSTONE TRADING LLC, GLORIA BUSINESS, INC., TECHNO ZONE, LLC, OKAPI, LLC, HENAN DERUN NEW MATERIAL TECHNOLOGY CO, LTD., SHEN ZHEN HEI SHI INVESTMENT LTD., and XNH US, | |
| Defendant. | Date:  TBD |
| | Time:  TBD |
| | Dept:  TBD |
| | Judge:  TBD |
| | Complaint Filed:  February 4 ,2021 |

23

24

25

26

27

28

NOTICE OF *EX PARTE* MOTION AND *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at a time to be set by the Court, pursuant to Federal Rule of Civil Procedure 65 and Civil Local Rule 65-1, Plaintiff Telebrands, Inc. ("Telebrands"), through its counsel, moves this Court for the entry of a Temporary Restraining Order and an Order to Show Cause why a Preliminary Injunction should not issue restraining and enjoining Defendants VindEx Solutions LLC, Cornerstone Trading LLC, Gloria Business, Inc., Techno Zone, LLC, Okapi, LLC, Henan Derun New Material Technology Co., Ltd., Shen Zhen Hei Shi Investment Ltd., and XNH US (collectively, "Defendants") and all persons acting in concert or participation with them (including, but not limited to, any officer, employee, agent or other representative of Defendants) from directly or indirectly:

a.       Continuing to unlawfully distribute Defendants' unauthorized TENS units either through third-party marketplaces such as Amazon, or any other platform whether online, by telephone, in retail stores or through any other medium within the United States;

b.       Destroying, erasing or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer files or other electronic storage media) in Defendants' possession or control which relate to Defendants' unauthorized TENS units.

Telebrands also requests that this Court enter an Order granting Telebrands leave to conduct expedited discovery.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, Telebrands' Verified Complaint, the records and pleadings on file in this action, and upon such other pleadings and evidence that may be presented prior to or at any oral argument that may be permitted by the Court. A Proposed Temporary Restraining Order is also respectfully submitted herewith.

In support of this Motion, Telebrands states as follows:

1.       Telebrands is a leading direct television marketing company and the original creator of the "As Seen on TV" logo and category of trade.  Telebrands markets innovative products nationwide designed to provide convenient solutions to everyday challenges.  Among Telebrands' innovative products is the Hempvana Rocket, a wireless, handheld electronic stimulation TENS unit designed to relieve pain in the user.  Telebrands has launched the Hempvana Rocket for sale on various third-party

NOTICE OF  MOTION AND  MOTION FOR TEMPORARY RESTRAINING ORDER

1    marketplaces, including Amazon and Facebook, to be marketed and distributed nationwide.  TENS

2    units are classified as Class II medical devices pursuant to 21 U.S.C. § 360c(i)(1)(B).   Under

3    regulations from the United States Food and Drug Administration ("FDA"), all manufacturers of Class

4    II medical devices must first submit a premarket 510(k) clearance notification to the FDA and obtain

5    clearance before the medical device may be distributed in the United States.  While the licensor from

6    whom Telebrands licensed the Hempvana Rocket did indeed secure clearance from the FDA before

7    distributing the product, Defendants, who each market a competing TENS units using third-party

8    marketplaces, have all neglected to obtain the proper FDA clearance before distributing their TENS

9    units.  As more fully described in the Verified Complaint and supporting documents, Defendants have

10   violated FDA regulations regarding Class II medical devices and are unfairly and unlawfully

11   competing against Telebrands by distributing their TENS units in violation the laws of California,

12   Colorado, Delaware, Pennsylvania and Florida.

13          2.       As set forth in the declaration of Telebrands' employee, Bala Iyer, pursuant to this

14   Court's local rules, Defendants were timely notified that Telebrands would be filing this Application.

15   *See* (Declaration of Bala Iyer ("Iyer Decl.")

16          3.       For the reasons stated in the Verified Complaint and in Telebrands' memorandum of

17   law filed in support of this Application, unless Defendants are enjoined from engaging in further

18   unlawful business practices in violation of the laws of the States of California, Florida, Pennsylvania,

19   Delaware, and Colorado, Telebrands will be irreparably harmed by inter alia:

20          a.       The loss of an incalculable amount of future patronage from clients due to Defendants

21   taking advantage of the brand recognition associated with the Hempvana Rocket and Telebrands' other

22   products, and Defendants' continued marketing and distribution of TENS units without clearance from

23   the United States Food and Drug Administration via third-party marketplaces such as Amazon and

24   Facebook, retail sales, or sales through any other medium;

25          b.       The loss of a full and fair opportunity to compete with Defendants for the sale of TENS

26   units nationwide in light of Defendants' decision to eschew the requirements pursuant to 21 C.F.R. §

27   882.5890, that all Class II medical devices for obtain clearance in the form of a 510(k) premarket

28   notification for the United States Food and Drug Administration;

1    In light of these (and other) considerations, Telebrands has no adequate remedy at law.

2    1.    A balancing of the relevant hardships favors the entry of injunctive relief, and such

3    relief would serve the public interest.

4    2.    Following the immediate entry of a Temporary Restraining Order, Telebrands requests

5    expedited discovery so that the Parties can prepare adequately for a preliminary injunction hearing.

6    WHEREFORE, Plaintiff Telebrands Corp. respectfully requests that this court:

7    A.    Enter a Temporary Restraining Order and/or Preliminary Injunction:

8    1.    Restraining and enjoining Defendants, and all of those acting in concert or

9    participation with Defendants, from directly or indirectly, continuing to unlawfully distribute

10    Defendants' unauthorized TENS units either through third-party marketplaces such as Amazon,

11    by telephone, in retail stores or through any other medium within the United States;

12    2.    Restraining and enjoining Defendants, and all those acting in concert or

13    participation with Defendants, from destroying, erasing or otherwise making unavailable for

14    further proceedings in this matter, any records or documents (including data or information

15    maintained in computer files or other electronic storage media) in Defendants' possession or

16    control which relate to Defendants' unauthorized TENS units.

17    B.    Enter and Order requiring Defendants and those acting in concert or participation with

18    Defendants to preserve all document, data, tangible things, and other materials relating to this case,

19    including without limitation, emails, data, databases, cloud storage, and paper and electronic data and

20    documents, including any and all metadata, and shall take all steps necessary to do so.

21    C.    Compel Defendants to, within ten (10) days of the entry of the Temporary Restraining

22    Order, provide a list of any and all channels of commerce through which they are currently selling their

23    product, and submit a certification that they have terminated all such distribution.

24    D.    Continue the Temporary Restraining Order in full force and effect through and

25    including a hearing before this Court on Telebrands' request for the entry of a Preliminary Injunction,

26    and set such a hearing at a date convenient for the Court;

27    E.    Grant the parties leave to commence discovery immediately in preparation for the

28    Preliminary Injunction hearing, and to conduct depositions of parties and any of their officers,

1  employees, agents or other representatives on five (5) day's notice; to require that responses to

2  productions of documents be served within ten (10) days; require that responses to interrogatories must

3  be served within fifteen (15) days.

4        F.        Grant Telebrands leave to effect service on Defendants Henan Derun New Material

5  Technology Co., LTD., Shen Zhen Hei Shi Investment Ltd., and XNH US via electronic means, and to

6  effect service on Defendants VindEx Solutions LLC, Techno Zone, LLC, Cornerstone Trading LLC,

7  Gloria Business, Inc., and Okapi, LLC via certified mail and email.

8

9  DATED: February 4, 2021                Respectfully submitted,

10                                         **STONE & MAGNANINI LLP**
                                                  David S. Stone, *pro hac vice forthcoming*
11

12                                         **EPSTEIN DRANGEL LLP**

13                                         By:      s/ Peter J. Farnese
                                                   Peter J. Farnese
14

15                                         *Attorneys for Plaintiff*
                                           *Telebrands Corp.*

16

17

18

19

20

21

22

23

24

25

26

27

28

**EPSTEIN DRANGEL LLP**
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: 310-356-4668
Facsimile: 310-388-1232

*Attorneys for Plaintiff*
*Telebrands Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELEBRANDS CORP., | CASE NO.  5:21-cv-00898 |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TELEBRANDS CORP.'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, FOR AN ORDER GRANTING LEAVE TO CONDUCT EXPEDITED DISCOVERY, AND FOR AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS** |
| v. | |
| VINDEX SOLUTIONS LLC, CORNERSTONE TRADING LLC, GLORIA BUSINESS, INC., TECHNO ZONE, LLC, OKAPI, LLC, HENAN DERUN NEW MATERIAL TECHNOLOGY CO, LTD., SHEN ZHEN HEI SHI INVESTMENT LTD., and XNH US, | |
| Defendant. | Date:    TBD<br>Time:    TBD<br>Dept:    TBD<br>Judge:    TBD<br><br>Date Action Filed:   February 4, 2021 |

1

2

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 4

    A.   Telebrands' Hempvana Rocket Handheld TENS Unit ........................... 4

    B.   The FDA's Regulatory Structure .......................................................... 5

    C.   Defendants' Unfair Competition and Unlawful Business Practices ...................... 6

    D.   Addresses and Contact Information Listed for Defendants Henan Derun,

          XNH and Shi Investment Are Inconsistent and Unreliable................................ 10

LEGAL STANDARD.................................................................................................. 11

LEGAL ARGUMENT ................................................................................................ 12

    A.   Telebrands is Likely to Succeed on the Merits. ................................................ 12

    B.   Telebrands is Likely to Suffer Irreparable Harm ............................................. 14

    C.   Granting the Requested Injunctive Relief Would Advance the Public Interest.................. 15

    D.   Balancing of the Relative Hardships Militates in Favor of Telebrands............................ 16

    E.   Expedited Discovery is Warranted Under These Circumstances ........................................ 17

    F.   Plaintiffs Are Entitled to an Order Authorizing Bifurcated and Alternative

          Service of Process by Electronic Means................................................................ 18

CONCLUSION ........................................................................................................... 21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance for the Wild Rockes v. Cottrell*,
    632 F.3d 1127 (9th Cir 2011) ................................................. 11

*Am. Trucking Assn's Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ................................................. 11

*Cadence Design Sys.*, Inc. *v. Avant! Corp.*,
    125 F.3d 824 (9th Cir. 1997) ................................................. 17

*Davis v. Zhou Liang*,
    789 Fed. App'x 66 (9th Cir. 2019) ................................................. 20

*DISH Network L.L.C. v. Ramirez*,
    No. 15-cv-04712-BLF, 2016 U.S. Dist. LEXIS 72317 (N.D. Cal. June 2, 2016) ............ 15-16

*Flynt Distrib. Co. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984) ................................................. 12

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
    No. C 03-1431 SBA, 2008 U.S. Dist. LEXIS 79689 (N.D. Cal. Mar 21, 2008) ................... 15

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ................................................. 12

*Kipu Sys., Ltd. Liab. Co. v. Zencharts, Ltd. Liab. Co.*,
    No. 17-24733-Civ, 2018 U.S. Dist. LEXIS 232063 (S.D. Fla. Mar. 29, 2018) ...................... 19

*KLA-Tencor Corp. v. Murphy*,
    717 F. Supp. 2d 895 (N.D. Cal. 2010) ................................................. 18

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ................................................. 11

*Tiffany (NJ) LLC v. Individuals, P'ships*,
    No. 0:20-cv-60299-KMM, 2020 U.S. Dist. LEXIS 223741 (S.D. Fla. Apr. 15, 2020) .......... 19

*iHealth Labs, Inc. v. Fingix, i-Enterprise*,
    No. 20-cv-05699-VKD, 2020 U.S. Dist. LEXIS 232630 (N.D. Cal. Dec. 10, 2020) ............. 19

*Optivus Tech, Inc. v. Ion Beam Applications S.A.*,
    No. CV 03-2052 SJO (VBKx),
    2004 U.S. Dist. LEXIS 30315 (C.D. Cal. Dec. 30, 2004) ................................. 12, 13

*Optivus Tech., Inc. v. Bio Beam Applications S.A.*,
    469 F.3d 978 (Fed. Cir. 2006) ................................................. 2, 12, 13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) ................................................. 14

ii

*Semitool Inc. v. Tokyo Electron Am.*,
208 F.R.D. 273 (N.D. Cal. 2002) ....................................................................... 17, 18

*Stuhlberg Int'l Sales Co. v. John D. Brusch & Co.*,
240 F.3d 832 (9th Cir. 2001) ................................................................................. 11

*Tevra Brads, LLC v. Bayer Healthcare LLC*,
No. 19-cv-04312-BLF, 2020 U.S. Dist. LEXIS 109919 (N.D. Cal. June 23, 2020) ......... 18-19

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
329 F. Supp. 3d 1070 (N.D. Cal. 2018) ................................................................. 15

**Federal Statutes**

21 U.S.C. 360c(a)(1)(A) .......................................................................................... 5

21 U.S.C. 360c(a)(1)(B) .......................................................................................... 6

21 U.S.C. 360c(a)(1)(C) .......................................................................................... 6

21 U.S.C. 360c(i)(1)(B) .......................................................................................... 6

21 U.S.C. § 301 ........................................................................................... *passim*

21 U.S.C. § 321 ..................................................................................................... 5

21 U.S.C. § 393(b)(1) ............................................................................................ 15

21 U.S.C. § 393(b)(2) ............................................................................................ 15

**State Statutes**

Cal. Bus. & Prof. Code § 17200 et seq. ............................................................... 12

Cal. Bus. & Prof. Code § 17500 et seq. ............................................................... 12

**Rules**

Fed. R. Civ. P. 4(f)(3) ...........................................................................................18

Fed. R. Civ. P. 26(d)(1) ....................................................................................... 17

Fed. R. Civ. P. 26(f) .............................................................................................17

**Other**

21 C.F.R. § 882.5890 ..................................................................................... *passim*

## **PRELIMINARY STATEMENT**

In their haste to enter the market for handheld Transcutaneous Electrical Nerve Stimulation devices ("TENS units"), Defendants VindEx Solutions LLC ("Vindex"), Techno Zone, LLC ("Techno Zone"), Gloria Business, Inc. ("Gloria"), Cornerstone Trading LLC ("Cornerstone"), Okapi, LLC ("Okapi"), Henan Derun New Material Technology Co., Ltd. ("Henan Derun"), Shen Zhen Hei Shi Investment Ltd. ("Shi Investment"), and XNH US ("XNH") (collectively, "Defendants"), all decided that the best way to get a leg up on the competition was to cheat. Defendants all came to the same conclusion that the fastest way to win the race to dominate the TENS unit market would be to simply start at the finish line.

At the forefront of the United States Food and Drug Administration's ("FDA") mission is to ensure the safety and quality of medical devices intended for human use. To achieve that mission, the FDA has promulgated numerous regulations, and enforced myriad statutory provisions to maintain a level of safety and quality assurance among products destined for consumer use. For TENS units, which are classified as Class II medical devices, regulations require that the distributor first make a premarket 510(k) submission to the FDA ensuring that the device is substantially equivalent to other predicate devices. To be clear, unless the distributor first obtains clearance pursuant to its 510(k) submission, it is not permitted to distribute its TENS unit within the United States.

Nevertheless, despite the unequivocal regulatory requirements, Defendants thought themselves exempt from that obligation, and immediately flooded third-party marketplaces such as Amazon with their uncleared products, marketing devices whose purpose is to send electrical currents through the human nervous system to consumers without any form of regulatory oversight. Defendants' pattern of unfair competition, in clear defiance of FDA regulations, is beyond dispute.

PLAINTIFF'S MOTION FOR TRO; OSC RE PI

Moreover, by injecting their products into a market that Defendants legally should never have entered, they have also violated the California Unfair Competition Law, which specifically proscribes conduct such as Defendants' which violates other ancillary regulations.  Defendants' liability is beyond reproach, and is in fact buttressed by a holding applying the California Competition Law to facts nearly identical to these.   In *Optivus Tech., Inc. v. Bio Beam Applications S.A.*, 469 F.3d 978 (Fed. Cir. 2006), the United States Court of Appeals for the Federal Circuit found that the defendant who, like Defendants here, tried to cut the line by ignoring the need for FDA clearance for medical devices before entering the market, had violated the California Unfair Competition by running afoul of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*. ("FDCA" or the "Act") even though the FDA itself creates no private right of action.

Plaintiff Telebrands Corp. ("Telebrands"), now finds itself in the unenviable position of attempting to enter that same market for TENS units, after releasing its own FDA-cleared TENS unit, the Hempvana Rocket, on the same third-party marketplaces that Defendants have been using.  Telebrands is already two steps behind, having made the investment to properly clear the Hempvana Rocket, thus falling behind in securing a portion of the market—a market that provides little to no opportunity to sell to consumers who have already purchased one of Defendants' competing TENS units.

Now, Telebrands is confronted with a dire scenario where its tried-and-true strategy of investing heavily into marketing to build the brand for its own products, will inadvertently advantage Defendants' competing TENS units based on third-party marketplace search assistance functions.  That will certainly lead to a steep drop in Telebrands' market share and a comparably severe loss of an unknowable amount of consumers.

It is from this vulnerable position that Telebrands seeks Court invention in the form of injunctive relief.  Relying on FDA regulations and the California Unfair Competition Law, Telebrands requests that this Court step in and prevent Defendants from continuing their unfair competition, and remove their TENS units from all sales platforms until they secure the proper 510(k) clearance.  Telebrands is not seeking to monopolize the market, or completely stop Defendants from ever selling their TENS units.  Telebrands has no objection to lawful competition with comparable products of comparable quality.  The issue is that Defendants are unlawfully marketing and distributing products that could be dangerous to the consumer because Defendants have not sought and obtained the necessary clearance to ensure their safety and effectiveness.  Telebrands only requests that Defendants play fair, and comply with the same regulations that Telebrands followed.  Indeed, Defendants would be obliged to do nothing more than what they were required to from the outset.  That not only encourages fair competition in the market, it achieves the equally important goal of shielding the public from medical devices which have not passed FDA muster.

Without the temporary restraining order and preliminary injunction that Telebrands seeks, the FDA's regulations become meaningless, and competitors who follow the rules end up kneecapping their own business.  Consumers find themselves at the mercy of distributors, hoping that the honor system is enough to ensure the products they use on themselves are safe and effective.  The consequences of such a scenario are unacceptable, and may be further exacerbated by the logistical difficulty in noticing Henan Derun, XNH and Shi Investment  of this litigation as any contact information for each of them is largely unavailable and unreliable.  Indeed, notice to VindEx, Cornerstone, Gloria, Techno Zone and Okapi will also prove to be a challenge due to their geographic distance from each and other Telebrands.  Nevertheless, Defendants' conduct cannot continue.  Accordingly, Telebrands respectfully requests that this Court enter a temporary

restraining order enjoining Defendants from continuing to distribute their uncleared TENS units within the United States, and enter an Order to Show Cause why a preliminary injunction should not issue enjoining the same conduct.  Moreover, Telebrands asks that the Court enter an Order granting limited expedited discovery in this matter in preparation for the hearing for a preliminary injunction, and leave to effect bifurcated and alternative service of process on Henan Derun, XNH and Shi Investment.

## STATEMENT OF FACTS

### A. Telebrands' Hempvana Rocket Handheld TENS Unit

Telebrands is a leading television marketing company and the original creator of the "As Seen on TV" logo and category of trade.  Each of Telebrands' innovative products is designed to provide convenient solutions to everyday challenges while saving consumers time and money. *See* Verified Complaint at ¶ 32.  Among Telebrands' innovative products is the Hempvana Rocket.  *Id.* at ¶ 33.  The Hempvana Rocket is a wireless, handheld electronic stimulation TENS unit designed to relieve pain in the user.  *Id.*  It uses TENS technology to relieve pain associated with sore and achy muscles in the user's shoulder, waist, back, neck, arms and legs.  *Id.*

On November 19, 2020, Telebrands entered into a license agreement with Healthcare Innovations LLC, who had obtained a 510(k) premarket clearance from the FDA, permitting the Licensor (and therefore its licensee, Telebrands) to begin distributing the product which would eventually become the Hempvana Rocket within the United States.  *Id.* at ¶ 34.  The Hempvana Rocket, which Telebrands markets on its proprietary website, https://hempvanarocket.com, is sold nationally, including in the States of California, Florida, Pennsylvania, Delaware and Colorado. *Id.* at ¶ 35.  Telebrands also has launched the Hempvana Rocket for sale on various national third-party marketplaces, such as Amazon and Facebookl.  *Id.*  Amazon markets and distributes the Hempvana Rocket nationwide.  *Id.*

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.  The FDA's Regulatory Structure**

Section 201(h) of the FDCA defines a medical device as "an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is: (A) recognized in the National Formulary, or the United States Pharmacopeia, or any supplement to them, (B) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or (C) intended to affect the structure of any function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes." *Id.* at ¶ 26; 21 U.S.C. § 321.

If a determination is made that a product meets the definition of a "medical device," additional analysis is necessary to determine which of three classifications is appropriate for the device, which vary based on the perceived level of risk associated with the device.  See Verified Complaint at ¶ 27.  Class I devices pose the lowest level of risk, while Class III devices pose the highest level of risk.  *Id.*  Due to the differing levels of risk, each classification has its own regulations and requirements before distribution in the United States is permitted.  *Id.*

Class I devices are subject to a set of general controls which are applicable to all classes of devices.  *Id.* at ¶ 28.  General controls may include establishment registration and device listing, prohibitions against adulteration and misbranding, keeping of records and reports, and Current Good Manufacturing Practices.  *Id.*; 21 U.S.C. 360c(a)(1)(A).

Class II devices require both general controls and specific controls.  *See* Verified Complaint at ¶ 29.  Specific controls can include performance standards, post market surveillance, patient registries, development of guidelines (including guidelines for the

5

submission of clinical data).  *Id.*; 21 U.S.C. 360c(a)(1)(B).  Class II devices also require a 510(k) premarket submission, which is made to the FDA to demonstrate that the subject device is "substantially equivalent" to another legally marketed device—the predicate device.  *See* Verified Complaint at ¶ 29.  The term substantially equivalent means that with respect to the predicate device, the subject device has the same intended use, indications for use and technological characteristics such as design, materials of construction, and physical characteristics.  *Id.*; 21 U.S.C.  360c(i)(1)(B).  In evaluating substantial equivalence, the FDA generally analyzes performance data such as mechanical behavior, electrical properties, sterility, biocompatibility, etc.  *See* Verified Complaint at ¶ 39.

For Class III devices, general controls are insufficient and there is insufficient information to establish specific controls to provide reasonable assurance of their safety and effectiveness.  *Id.* at ¶ 30; 21 U.S.C. 360c(a)(1)(C).  TENS units are Class II devices, and are assigned a product code by the FDA based on the details of the product.  Because TENS units are Class II devices, they require 510(k) premarket clearance prior to their sale in the United States.  *See* Verified Complaint at ¶ 31.

**C. Defendants' Unfair Competition and Unlawful Business Practices**

a.      Each of the Defendants has a competing product available on Amazon: (a) Techno Zone, through its Zolaro brand, markets the Meridian Energy Acupuncture Pen within the United States; (b) Gloria Business, through its AOBBiY brand, markets the Acupuncture Massager Pen within the United States; (c) Cornerstone, through its BreoLife brand, markets the Electronic Acupuncture Pen within the United States; (d) VindEx, through its Scree brand, markets the SmartChoice4U Direct product within the United States; (e) Okapi, through its FORTIVO brand, markets the Acupuncture Massage Pen within the United States; (f) Henan Duran, through its UniforU brand, markets the Massager Pen within the United States; (g) Shi Investment, through

its Blitzby brand, markets the 5-in-1 Acupuncture Pen within the United States; and (h) XNH, through its FOHYLOY brand, markets the Meridian Energy Acupuncture Pen within the United States. *Id*. at ¶ 36.

Concerned about the competition posed by Defendants' products, Telebrands sought the services of an expert to systematically examine each of Defendants' products to determine their uses and to confirm that they had obtained all the appropriate clearance from the FDA. *Id*. at ¶ 37. Telebrands consulted with Exponent, Inc. to identify and document the physical, electrical and safety parameters of the Defendants devices. *Id*. at ¶ 38.

Exponent, Inc. began by assessing the benefits and intended uses of Defendants' devices. *Id.* at ¶ 39. What Exponent, Inc. noticed was that chief among the claims made by the Defendants in the materials marketing their devices was the focus on pain relief, the prevention of muscular atrophy by triggering rapid muscle contraction and also blocking pain signals as they travel through the nervous system to the user's brain. *Id*. All of these purported benefits are typical of handheld TENS units such as the Hempvana Rocket. *Id*.

Moreover, Exponent, Inc. noted that the safety precautions indicated for the Defendants' devices also aligned precisely with those of the Hempvana Rocket and other TENS units. *Id*. at ¶ 40. Specifically, safety precautions called for the user to avoid using the devices if the user has a pacemaker, pulse regulator, artificial heart, lungs, or other life sustaining electronic medical devices. *Id*. In addition, Defendants devices are not to be used on or near mucus membranes or bodily orifices, and users should be certain to consult with a physician before use if pregnant. *Id*.

Based on its comparative analysis of Defendants' products with several FDA cleared TENS devices already available in several markets, Exponent, Inc. concluded that they were indeed TENS units. *Id*. at ¶ 41. Accordingly, Defendants needed to have obtained clearance from the FDA pursuant to a premarket 510(k) submission. *Id.*

Exponent, Inc. continued its analysis by conducting a comprehensive search of the FDA's establishment registration and device listing database for Defendants' products. *Id*. at ¶ 42. Establishment registration and device listings provide the FDA with the location of medical device establishments and the devices manufactured in those establishments. *Id*. The search included filtering for all available FDA product codes assigned to TENS units. *Id*. It also included a separate search for information on all FDA registered owners and operators of businesses involved in the production and distribution of medical devices for intended use in the United States. *Id*.

After completing its diligent and thorough search, Exponent, Inc. determined that not a single one of the Defendants' competing TENS units was identified in the FDA database. *Id*. at ¶ 43. In short, none of the Defendants obtained the requisite FDA 510(k) clearance before distributing their TENS units nationwide. *Id.* As distributors of Class II medical devices, Defendants were under an obligation, pursuant to 21 C.F.R. § 882.5890, to obtain such clearance. *Id*. Nevertheless, despite the clear requirement as promulgated in FDA regulations, Defendants all neglected to obtain the proper clearance, and have instead engaged in the unlawful business practice of distributing those TENS units nationwide using third-party marketplaces such as Amazon and Facebook. *Id.* at ¶ 44.

Defendants systematic scheme of unfair competition threatens to cause irreparable harm to Telebrands now that the Hempvana Rocket has been launched on third-party marketplaces. *Id*. at ¶ 45. For example, Amazon's search function provides additional assistance to users, by not only showing the particular device that the user wishes to purchase, but also editorial recommendations, similar devices, and devices that other users have previously purchased. *Id*. Central to Telebrands' business model, which has seen great success in the past, is making large expenditures on advertising upon the launch of a new product. *Id.* at ¶ 46. Frequently, the

8

advertising expenditures can total in the millions of dollars, with the purpose being to build a recognizable brand for that product. *Id.* That recognizable brand then solidifies Telebrands' position in the marketplace, allowing sales to grow proportionately. *Id.*

Unfortunately, because Defendants have already been distributing their products on third-party marketplaces without the proper clearances, and due to the enhanced search functionality of third-party marketplaces such as Amazon, Telebrands anticipates that the expenditures made to create a brand for the Hempvana Rocket will inadvertently inure to the great benefit of Defendants. *Id*. at ¶ 47  Defendants will be able to piggyback off of the money spent on and popularity gained by the advertising for the Hempvana Rocket. *Id.*

Accordingly, Telebrands is faced with the unforeseeable hurdle of substantial unfair competition from Defendants TENS units, despite the clear prohibition against Defendants distributing them in the United States. *Id*. at ¶ 48.

The irreparable harm to Telebrands comes in several forms. *Id.* at ¶ 49.  First, Defendants receive an unfair advantage by improperly and unlawfully distributing their TENS units without first incurring the transactional cost of obtaining clearance after making a 510(k) submission. *Id.* Having avoided the costs associated with 510(k) clearance, Defendants can then avail themselves of the popularity earned by the Hempvana Rocket and Telebrands as a widely known national brand, and unfairly and unlawfully compete against Telebrands, necessarily resulting in dilution of the market for handheld TENS unit. *Id.*  Simply put, Defendants have leapfrogged the requirements and positioned themselves at the finish line while avoiding the expense required to properly—and safely—sell a TENS unit in the United States. *Id.* at ¶ 50.

Indeed none of the labeling or advertising materials for Defendants TENS unit indicate that as Class II medical devices, they require 510(k) clearance, or that the Defendants all neglected to obtain such clearance. *Id*. at ¶ 51.  That glaring omission of a material fact creates a

9

substantial likelihood that consumers, who otherwise would not have purchased Defendants products due to potential safety concerns using an uncleared product meant to send electrical pulses through their muscles, will be misled into purchasing Defendants' TENS units believing them to be safe and equivalent to the Hempvana Rocket. *Id*.

That harm will lead to the second, more grave harm, which is the dilution of the market and a precipitous loss of consumers, the amount of which Telebrands simply cannot quantify. *Id*. at ¶ 52. Customers who have already purchased Defendants TENS units are unlikely to purchase the Hempvana Rocket. *Id*. at ¶ 53. Indeed, consumers who purchased Defendants' TENS units will likely never learn of the fact that Defendants' TENS units never received the proper clearance. *Id*.

Due to the threat of continued irreparable harm, Telebrands seeks a temporary restraining order to enjoin Defendants from continuing to unlawfully distribute their unauthorized TENS units through third-party marketplaces such as Amazon, telephonically, in retail stores or in any other medium within the United States to prevent the extensive, irreparable harm which Telebrands will suffer if such conduct is not immediately halted. *Id*. at ¶ 54. Following issuance of the temporary restraining order, Telebrands will also seek an immediate hearing on the issuance of a preliminary injunction, and ultimately a permanent injunction enforcing the same injunctive relief. *Id*. at ¶ 55.

**D. Addresses and Contact Information Listed for Defendants Henan Derun, XNH and Shi Investment Are Inconsistent and Unreliable.**

On January 22, 2021, Counsel for Telebrands served Defendants, VindEx, Cornerstone, Techno Zone, Gloria, and Okapi with cease and desist letters demanding that they immediately cease distributing their uncleared TENS units within the United States. *See* Certification of Bala Iyer, dated January 29, 2021 ("Bala Cert."), ¶ 9.

PLAINTIFF'S MOTION FOR TRO; OSC RE PI

However, Counsel was unable to serve the Chinese Defendants Henan Derun, Shi Investment, and XNH, by mail at the same time as their addresses were difficult to ascertain as internet searches for each company's address and contact information were inconsistent and unreliable among different sources. *Id.* at ¶ 10. There were also no email addresses made available for any of these three Defendants. Moreover, Telebrands experienced difficulty translating what information it could find about Henan Derun, Shi Investment and XNH into English. *Id.*

Telebrands searched through Amazon, various corporate entity searches, and simple searches of the Chinese Defendants' names in order to find addresses through which they could be reached. *Id.* at ¶ 11. While Telebrands was able to approximate addresses for them, it appears that the most effective method of contacting any of them would be through Amazon. *Id.* at ¶ 11. Accordingly, Henan Derun, Shi Investment, and XNH were served with cease and desist orders through Amazon messaging. *Id.*

## **LEGAL STANDARD**

The same legal standard applies to a motion for a temporary restraining order and a motion for a preliminary injunction. *See Stuhlberg Int'l Sales Co. v. John D. Brusch & Co.*, 240 F.3d 832, 837 N.7 (9th Cir. 2001). A plaintiff seeking either "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Am. Trucking Assn's Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Resources Defense Council*, 555 U.S. 7, 20 (2008)).

To grant injunctive relief, a court must find that "a certain threshold showing is made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). As a corollary to those four factors, the Ninth Circuit has also found that a preliminary injunction is appropriate if

11

"serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockes v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir 2011).

Due to the exigent nature of an injunction, a court may consider hearsay and other evidence that would otherwise be inadmissible at trial. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *see also Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").

## **LEGAL ARGUMENT**

### A.  Telebrands is Likely to Succeed on the Merits.

The California Unfair Competition Law,  prohibits any unlawful, unfair or fraudulent business act or practice, any unfair deceptive, untrue or misleading advertising, and any violations of Business and Professions Code Section 17500 *et seq.*  Cal. Bus. & Prof. Code § 17200 *et seq.* "The California Supreme Court has interpreted the California Unfair Competition Law such that 'a private plaintiff may bring [an unfair competition law] action even when the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action.'" *Optivus Tech Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 986 (Fed. Cir. 2006) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 950, 119 Cal. Rptr. 2d 296, (2002)) (*Optivus II*).  In *Optivus*, the plaintiff and defendant were competitors who both marketed and sold proton beam therapy systems. *Optivus Tech, Inc. v. Ion Beam Applications S.A.*, No. CV 03-2052 SJO (VBKx), 2004 U.S. Dist. LEXIS 30315, at *9 (C.D. Cal. Dec. 30, 2004) (*Optivus I*). The defendant received a request for a proposal regarding the construction of a proton beam therapy facility at the University of Florida.  *Id.*  At the time that the defendant submitted its proposal for the proton beam therapy facility, it had not yet obtained FDA clearance, and in fact

12

had been advised by the FDA that it was prohibited from marketing its proton beam therapy until it obtained the requisite clearance. *Id.* at \*31. Nevertheless, the defendant submitted its proposal and won the bid for the project at the University of Florida. *Id.* at \*31-32.

The plaintiff in the *Optivus* line of cases sued the defendant in the district court under the California Unfair Competition Law claiming that it had been damaged by the defendants unfair business practice of submitting a bid for the University of Florida project despite being explicitly told by the FDA that such a submission was prohibited. *Id.* at \*9-10. On appeal, the court held that the plaintiff's claim rightly survived a motion to dismiss and paid particular attention to the fact that the defendant had not obtained clearance from the FDA before marketing and attempting to distribute its medical devices. *Optivus II*, 469 F.3d at 986.

Here Defendants find themselves in a similar situation, although they are further along in the commission of their unfair business practices since they are actively distributing their uncleared TENS units throughout the United States in violation of clearly mandated FDA regulations. Such misconduct is exactly the sort of unfair competition the California Unfair Competition Law was meant to prohibit, a party eschewing clearly defined regulations in the pursuit of business opportunities. Just as the defendant in the *Optivus* case attempted to secure a leg up on their competition by improperly ignoring regulations, so have the Defendants in this matter. Liability is simple, by failing to first secure premarket 510(k) clearance, Defendants failed to comply with necessary regulations before distributing their TENS units. In no uncertain terms, the California Unfair Competition Law prohibits violation of regulations in the performance of business. Without question, Telebrands has demonstrated a clear likelihood of success on the merits.

### B.  Telebrands is Likely to Suffer Irreparable Harm

As articulated above, Telebrands is likely to suffer irreparable harm if Defendants are not enjoined from continuing their pattern of unfair competition and unlawful business practices. Defendants have already sidestepped the 510(k) clearance required pursuant to 21 C.F.R. § 882.5890, and are distributing their competing TENS units nationwide.  The market for TENS units, which is a notably specific market, is already weighed down with Defendants who are willing to completely ignore their regulatory requirements, and piggyback off of the success of properly-cleared TENS units.   Without the issuance of a temporary restraining order and preliminary injunction, Telebrands faces irreparable harm, loss and damage severe enough to effectively remove it from the market in its entirety should this Court take no action to enjoin Defendants from violating the California Unfair Competition Law.

The threat of ongoing unfair competition manifested in Defendants' injecting into the market TENS units that have not obtained the proper clearance undoubtedly constitutes irreparable injury.  The case of *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011) is instructive.  In *Bosch*, the plaintiff sued the defendant for patent infringement for a specific type of windshield wiper blade, and principal among its arguments demonstrating irreparable harm was the fact that monetary damages would be insufficient since the plaintiff was due to lose a significant share of the market, lose business opportunities, and suffer severe price erosion unless the defendant was enjoined from continuing its infringement.  *Id.* The court agreed, and noted that there was no evidence to suggest that the defendant would cease its infringement, and that "'future infringement may have market effects never fully compensable in money.'"  *Id.* (quoting *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994)).

Here, Telebrands faces a similar scenario.   Defendants are already distributing their products on third-party marketplaces.  They have already secured a portion of the market for

handheld TENS units that Telebrands will likely never be able to recover without injunctive relief.   The potential consumers who have already purchased Defendants' competing, unauthorized TENS units have been removed from the market, thus completely eliminating those business opportunities.   Telebrands' business model is to heavily invest in advertising in order to create a unique brand for each of its products.   Ironically, this same practice will serve to only exacerbate the harm already caused by inadvertently boosting the popularity of Defendants' brands whose products will show up as suggestions for consumers viewing the Hempvana Rocket.   These are exactly the harms that the *Bosch* court held constituted irreparable harm worthy of the issuance of injunctive relief.   The harm to Telebrands is incalculable.   This is an especially severe loss of business opportunity and market share since the demand for TENS units is highly elastic.   Telebrands is not marketing and distributing a product that consumers anticipate buying in bulk or constantly needing to replace.   Once a sale has been made, or once a segment of the market has been taken by Defendants, those potential earnings effectively evaporate, making it difficult to determine exactly how much was lost.

**C.  Granting the Requested Injunctive Relief Would Advance the Public Interest**

A temporary restraining order and a preliminary injunction would support the public's interest in ensuring fair competition among business entities.  *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2008 U.S. Dist. LEXIS 79689, at *17 (N.D. Cal. Mar 21, 2008) ("Moreover, the Federal Circuit has observed that the public interest is clearly served by healthy, fair competition[…]); *see also Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 329 F. Supp. 3d 1070, 1122 (N.D. Cal. 2018) (noting that competition induced by misconduct such as patent infringement is contrary to the public interest in fair competition). Furthermore, injunctive relief in this matter also foments the public interest in ensuring the safety of medical devices intended for use, as articulated in the FDA's mission statement. *See* 21 U.S.C.

§ 393(b)(1) & (2) (The [Food and Drug] Administration shall… promote the public health by promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products in a timely manner; with respect to such products, [the Administrator shall] protect the public health by ensuring that…there is reasonable assurance of the safety and effectiveness of devices intended for human use."); *see also DISH Network L.L.C. v. Ramirez*, No. 15-cv-04712-BLF, 2016 U.S. Dist. LEXIS 72317, at *19 (N.D. Cal. June 2, 2016) ("[W]hen a prospective injunction would 'do no more than require Defendant to comply with federal and state […..] laws,' then the public has an interest in the enforcement of the statutes.") (quoting *Dish Network, L.L.C. v. SatFTA*, No. 5:08-cv-01561 JF (PSG) 2011 U.S. Dist. LEXIS 25038, at *23 (N.D. Cal. Mar. 9, 2011)).

Without the imposition of injunctive relief, not only are the FDA's strict requirements with respect to premarket clearance rendered ineffective, but consumers will be misled regarding the quality and safety assurances of medical devices. Defendants' devices send electrical currents through the user's nervous system to block pain signals. Numerous claims as to the physiological benefits resulting from use dot the marketing materials for all of the uncleared TENS units. For the sake of the consuming public, distribution of devices making such claims and employing such technologies cannot be permitted completely free of government regulation and oversight. A temporary restraining order and subsequent preliminary injunction must be granted.

### D. Balancing of the Relative Hardships Militates in Favor of Telebrands

Telebrands will suffer irreparable harm if Defendants continue to engage in their pattern of unfair competition. In contrast, Defendants will suffer no undue hardship were this Court to grant injunctive relief as Telebrands does not seek to permanently enjoin Defendants from ever distributing their TENS units within the United States. To the contrary, Telebrands seeks only to ensure that Defendants follow mandatory FDA regulations in the same way that it was required

to.  If the Court were to grant Telebrands' request for a temporary restraining order and a preliminary injunction, Defendants could return to distributing their competing TENS units as soon as they complied with the FDA regulations with which they were obliged to comply from the outset.  In short, no additional hardship is being levied against Defendants.  *See Dish Network L.L.C.*, No. 15-cv-04712-BLF, at \*19 (N.D. Cal. June 2, 2016) (balance of hardships tips in favor of plaintiff seeking injunction when it would "do no more than require defendant to comply with federal and state… laws") (citation omitted); *see also Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (finding that "where the only hardship that the defendant will suffer is lost profits" from an unfair business practice "such an argument in defense merits little equitable consideration") (citing *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995)).  Telebrands seeks only to  hold Defendants to the same standard as any other distributor of a handheld TENS unit.

### E.  Expedited Discovery is Warranted Under These Circumstances

To obtain the information necessary to fully brief its argument, and to prepare for a hearing on the granting of the preliminary injunction, Telebrands requests that the Court grant it the opportunity to conduct specific, limited expedited discovery.  Federal courts have the authority to permit expedited discovery, prior to a Rule 26(f) conference, upon a showing of good cause.  *See* Fed. R. Civ. P. 26(d)(1); *Semitool Inc. v. Tokyo Electron Am.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*  "[C]ourts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition."  *Id.*

Here, Telebrands requires that the Court allow it to obtain discovery related to any and all platforms Defendants have utilized to market and distribute their TENS units, including third-

party marketplaces such as Amazon, other online retailers, trade publications, in-store sales, and any other methods.  While Telebrands was able to find Defendants' competing TENS units on Amazon, there is potential that the same uncleared medical devices are being sold on platforms about which Telebrands is unaware.  Absent expedited and limited discovery, there is no way to ensure the effectiveness of the injunctive relief that Telebrands requests due to a lack of information as to the extent of Defendants' misconduct.

The facts underlying this application underscore the need for expedited discovery and courts in the Ninth Circuit resolving similar claims of unfair business practices have granted requests for such discovery.  *See KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 898 (N.D. Cal. 2010) (granting plaintiffs "leave to take expedited discovery, including oral depositions of the individual defendants" after issuing a temporary restraining order prohibiting the use or disclosure of trade secrets and prior to a preliminary injunction hearing on the same).  The information Telebrands seeks goes to the core of the injunctive relief.  Moreover, any potential prejudice from this limited expedited discovery is minimal, not least because the "requested information is relevant and will be produced in the normal course of discovery."  *Semitool*, 208 F.R.D. at 276.  Accordingly, Telebrands' request for expedited discovery should be granted.

**F.  Plaintiffs Are Entitled to an Order Authorizing Bifurcated and Alternative Service of Process by Electronic Means**

Fed. R. Civ. P. (4) governs service on Defendants Henan Derun, Shi Investment, and XNH as they are all located in China.  "Under Rule 4(f)(3), trial courts may authorize service through a variety of methods, 'including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email."  *Tevra Brads, LLC v. Bayer Healthcare LLC*, No. 19-cv-04312-BLF, 2020 U.S. Dist. LEXIS 109919, at *7 (N.D. Cal. June 23, 2020) (quoting *Rio Props., Inc. v. Rio Intern, Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).  "To comport with due process, 'the method of service crafted by the

district court must be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Rio Props, Inc.* 284, F.3d at 1016-17).  "A party seeking authorization to serve under Rule 4(f)(3) need not show that all feasible service alternatives have been exhausted but instead, it needs to 'demonstrate that the facts and circumstances of the… case necessitate the district court's intervention.'"   *Id.* (quoting *Rio Props, Inc.* 284, F.3d at 1016).  "'[T]he task of determining when the particularities and necessities of a given case require alternative service of process under rule 4(f)(3)" is committed "to the sound discretion of the court."  *Id.* at *7-8 (quoting *Rio Props, Inc.* 284, F.3d at 1016).

While these three Defendants operate sophisticated commercial businesses which offer products for sale worldwide off of third-party marketplaces such as Amazon, information confirming their actual physical addresses were difficult to ascertain.  Internet searches for addresses for each of the three Chinese Defendant produced inconsistent and unreliable results among different websites and online platforms.  Searches across platforms dedicated to finding corporate entities yielded poor results, and even the results that Telebrands found were unreliable as English translations were only approximate.  In addition, there are no international agreements to which China is a signatory that prohibits service by website publication.  *See iHealth Labs, Inc. v. Fingix, i-Enterprise*, No. 20-cv-05699-VKD, 2020 U.S. Dist. LEXIS 232630, at *7 (N.D. Cal. Dec. 10, 2020)  Accordingly, Telebrands seeks to serve Defendants Henan Derun, Shi Investment and XNH via website publication along with direct messages containing the URL to the publication website sent via Amazon's seller messaging application.

Service on these three Defendants by website publication along with a message through Amazon will comport with due process as it is reasonably calculated to provide them with notice.  *See e.g. Tiffany (NJ) LLC v. Individuals, P'ships*, No. 0:20-cv-60299-KMM, 2020 U.S. Dist.

LEXIS 223741 (S.D. Fla. Apr. 15, 2020) (publication by website in addition to emailing defendants the website URL); *Kipu Sys., Ltd. Liab. Co. v. Zencharts, Ltd. Liab. Co.*, No. 17-24733-Civ, 2018 U.S. Dist. LEXIS 232063 (S.D. Fla. Mar. 29, 2018) (permitting service via LinkedIn and publication on plaintiff's website).  These Defendants have made it exceedingly difficult to pinpoint a mailing address for them and they have not provided any email addresses for contacting them which has greatly stymied service.  Moreover, although China is a signatory to the Hague Convention, service under the Hague Convention would require Telebrands to provide these Defendants' addresses to the Chinese Ministry of Justice.  *See Davis v. Zhou Liang*, 789 Fed. App'x 66, 66 (9th Cir. 2019) (noting that a plaintiff must provide service documents to the Chinese Ministry of Justice to comply with the Hague Convention).  As already noted, Telebrands was unable to find reliable addresses for any of these three Defendants.

Furthermore, Telebrands requests to serve the remaining Defendants, VindEx, Cornerstone, Techno Zone, Gloria, and Okapi, by a combination of certified mail and email. While the remaining Defendants are not domiciled overseas, they do list registered addresses all across the United States.  Effecting service of process on the remaining Defendants would not only be remarkably expensive, but the requirement that service be made in person carries a significant risk of delay in proper service due to the wide geographic range between each entity. Considering one of the goals of this application is to obtain rapid injunctive relief in the form of a temporary restraining order to enjoin Defendants from unlawful competition, it is imperative that they be put on notice of the injunctive relief immediately.  By permitting service by email and certified mail, Telebrands and this Court can be certain that Defendants have been served both effectively and rapidly in a manner consistent with the mandates of due process.[1]

---

[1] Due to uncertainty as to the remaining domestic Defendants' addresses, and the looming COVID-19 pandemic which has resulted in an increased number of individuals working from home as opposed to at office locations, Plaintiff Telebrands may encounter difficulty in effecting service of process on them.  Accordingly, should

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Therefore, Telebrands respectfully submits that an order authorizing alternative service benefits all parties and the Court by ensuring that Defendants receive immediate notice of the pendency of this action to move forward expeditiously.

## CONCLUSION

For the foregoing reasons, Telebrands respectfully requests that the Court grant its application for a temporary restraining order and an order to show cause why a preliminary injunction should not issue enjoining Defendants from further distribution of their uncleared, competing TENS units within the United States.  In addition, Telebrands further requests that the Court enter an order granting expedited discovery, and an order authorizing bifurcated and alternative service of process.

Dated: February 4, 2021                                   Respectfully submitted,

                                        By: /s/ Peter J. Farnese
                                            Peter J. Farnese, Esq.
                                            EPSTEIN DRANGEL LLP
                                            700 S. Flower St., Suite 1000
                                            Los Angeles,, CA 90017
                                            Tel: (310) 356-4668
                                            Fax: (310) 388-1232
                                            pfarnese@ipcounselors.com

                                            David S. Stone, Esq.
                                            *(Pro Hac Vice* Motion Forthcoming)
                                            STONE & MAGNANINI LLP
                                            100 Connell Drive, Suite 2200
                                            Berkeley Heights, NJ 07922
                                            Tel: (973) 218-1111
                                            Fax: (973) 218-1106

Telebrands encounter such difficulty, it reserves the right to move before this court again for Alternative service of process on the domestic Defendants, requesting to effect service of process through website publication and Amazon messaging just as Telebrands is seeking to do with the Chinese Defendants.

PLAINTIFF'S MOTION FOR TRO; OSC RE PI