**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| TELEBRANDS CORP.,<br>　　　　　Plaintiff,<br>　v.<br>VINDEX SOLUTIONS LLC, et al.,<br>　　　　　Defendants. | Case No.  21-cv-00898-BLF<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF No. 61] |

Before the Court is Plaintiff Telebrands Corp.'s ("Telebrands") motion for default judgment against Defendants Henan Derun New Material Technology Co. ("Henan Derun") and XNH US ("XNH") (collectively, "Defendants") in this unfair competition case based on Defendants' alleged sales of transcutaneous electrical nerve stimulation ("TENS") units without clearance from the U.S. Food and Drug Administration ("FDA").

Based on the below reasoning, the Court GRANTS Telebrands' motion.

**I.  BACKGROUND**

　　**A.  Regulatory Background**

The Federal Food, Drug, and Cosmetic Act ("FDCA") provides requirements for medical devices according to a three-tiered system—Class I, II, and III devices. *See* 21 U.S.C. § 360c-(a)(1). TENS units, the devices at issue in this litigation, are classified as Class II devices. *See* 21 C.F.R. § 882.5890. Before a manufacturer can bring a Class II device to market, the FDCA requires filing a 510(k) premarket submission with the FDA. 21 U.S.C. § 360(k); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477–79 (1996). Under the 510(k) process, if the Class II device is deemed "substantially equivalent" to a pre-existing device with prior clearance, it can be put on the market. *See* 21 C.F.R. § 807.100; *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 925 (9th Cir. 2010). A device is "substantially

equivalent" to a predicate device when it has the same intended use and the same technological characteristics like materials, design, and energy source. *See* 21 C.F.R. § 807.100(b).

### B. Factual Background

Defendants are Chinese corporations with their principal places of business in China. *See* Complaint, ECF No. ¶¶ 19, 21. Defendants allegedly conduct business throughout the United States through online promotion of their TENS products. *See id.* Telebrands is a New Jersey corporation with its principal place of business in New Jersey, which allegedly conducts business throughout the United States. *See id.* ¶ 13.

This action involves TENS units, which are medical devices used for pain relief that deliver electrical impulses through electrodes placed on a user's skin. Telebrands allegedly markets a product called the Hempvana Rocket, which is a wireless, electronic TENS unit. *See id.* ¶ 33. On November 19, 2020, Telebrands allegedly entered into a license agreement with Healthcare Innovations LLC, which had obtained a 510(k) premarket clearance from the FDA to sell—and for its licensees to sell—the Hempvana Rocket within the United States. *See id.* ¶ 34. Telebrands sells the Hempvana Rocket nationally, including on a proprietary website and on third-party websites like Amazon and Facebook. *See id.* ¶ 35.

Telebrands alleges that Defendants have competing products available on Amazon within the United States. *See id.* ¶ 36. Henan Derun markets the Massager Pen under its UniforU brand. *See id.* ¶ 36(f). XNH markets the Meridian Energy Acupuncture Pen under its FOHYLOY brand. *See id.* ¶ 36(h). Telebrands alleges that it consulted with Exponent, Inc., which determined that Defendants' products are TENS units for which Defendants did not obtain the requisite 510(k) clearance. *See id.* ¶¶ 38–44.

Telebrands alleges that Defendants have caused it irreparable harm by selling the Accused Products in the U.S. without the requisite clearance. First, Telebrands alleges that Defendants unfairly avoided the cost of obtaining 510(k) clearance and now can avail themselves of the popularity of the Hempvana Rocket. *See id.* ¶ 49. Telebrands alleges that its business model is to make large advertising expenditures for the launch of a new product to create a recognizable brand for that product. *See id.* ¶ 46. Telebrands alleges that Defendants will "piggyback off" Telebrands'

advertising related to the Hempvana Rocket, including because websites like Amazon show similar products in search results. *See id.* ¶¶ 45, 47. Second, Telebrands alleges that the sales of Defendants' TENS products will lead to the dilution of the market for handheld TENS devices, including because consumers will be misled into thinking the Accused Devices are safe and equivalent to the Hempvana Rocket despite lacking 510(k) clearance. *See id.* ¶¶ 51–53.

Telebrands alleges violations of (1) California's Unfair Competition Law, Cal. Bus. & Prof. C. § 17200 *et seq*; (2) Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*; (3) the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq*; (4) the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2531 *et seq*; and (5) the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101. *See* Complaint, ECF No. 1 ¶¶ 56–96. Telebrands seeks a permanent injunction restraining Defendants from "directly or indirectly continuing to lawfully distribute [their] uncleared TENS units through third party marketplaces such as Amazon, or any person or entity acting in concert with Defendants, from continuing to unlawfully distribute [their] uncleared TENS units through third-party marketplaces such as Amazon, in retail stores or through any other medium within the United States." *Id.* at 17–18.

### C. Procedural Background

Telebrands filed the Complaint on February 4, 2021, asserting claims against Defendants VindEx Solutions LLC ("VindEx"); Cornerstone Trading LLC ("Cornerstone"); Gloria Business, Inc. ("Gloria"); Techno Zone, LLC ("Techno Zone"); Okapi, LLC ("Okapi"); Henan Derun; Shen Zhen Hei Shi Investment Ltd. ("Shen Zhen"); and XNH. *See* ECF No. 1. On the same date, Telebrands filed an application for a temporary restraining order "enjoining Defendants, and all of those acting in concert or participation with Defendants, from directly or indirectly, continuing to unlawfully distribute Defendants' unauthorized TENS units either through third-party marketplaces such as Amazon, by telephone, in retail stores or through any other medium within the United States." ECF No. 3.

On February 8, 2021, the Court ordered Defendants to respond to Telebrands' application by February 10, 2021 and directed Telebrands to serve Defendants notice of the Court's order by

1  email no later than February 8, 2021. *See* Order, ECF No. 9. On February 10, 2021, upon
2  Telebrands' request, the Court permitted Telebrands to serve Defendants through Amazon Seller
3  Messaging Assistant, which Telebrands did as authorized. *See* Order, ECF Nos. 11, 12. The Court
4  heard Telebrands' application on February 11, 2021, and only counsel for VindEx, Techno Zone,
5  Okapi, and Gloria appeared. *See* Order, ECF No. 26 at 1. The Court issued a temporary restraining
6  order and ordered the other Defendants, including Henan Derun and XNH, to show cause why the
7  preliminary injunction should not issue. *See id.* at 2. When they failed to respond, the Court issued
8  a preliminary injunction ordering that these Defendants were "restrained and enjoined from
9  distributing . . . uncleared TENS units within the United States either through third-party
10 marketplaces including Amazon or Facebook, by telephone, in retail stores, or through any other
11 medium within the United States," including "Defendant Henan Derun New Material Technology
12 Co., Ltd.'s UniforU brand Massager pen" and "Defendant XNH US's FOHYLOY brand Meridian
13 Energy Acupuncture Pen." Order, ECF No. 37 at 8. On April 19, 2021, the Court granted
14 Telebrands' motion to serve Henan Derun and XNH with the Complaint and the order granting
15 Telebrands' application for a temporary restraining order via Amazon Seller Messaging Assistant.
16 *See* Order, ECF No. 46.

17 Telebrands voluntarily dismissed its claims against Gloria, Shen Zhen, Okapi, Techno Zone,
18 Cornerstone, and VindEx. *See* ECF Nos. 31, 32, 41, 45, 48, 52. Accordingly, Henan Derun and
19 XNH are the only Defendants remaining in this action.

20 On July 19, 2021, Telebrands filed a motion for entry of default against Henan Derun and
21 XNH. *See* ECF No. 57. The Court entered default against Henan Derun and XNH on July 20, 2021.
22 *See* ECF No. 58. On October 14, 2021, Telebrands filed the present Motion for Default Judgment
23 against Henan Derun and XNH. *See* ECF No. 61. Neither Henan Derun nor XNH filed a response,
24 and the deadline to file a response has passed. Civ. L.R. 7-3(a). Pursuant to Civil Local Rule 7-1(b),
25 the Court found the Motion appropriate for determination without oral argument. *See* ECF No. 62.

26 **II. LEGAL STANDARD**

27 Default may be entered against a party who fails to plead or otherwise defend an action, who
28 is neither a minor nor an incompetent person, and against whom a judgment for affirmative relief is

4

sought. Fed. R. Civ. P. 55(a). After an entry of default, a court may, in its discretion, enter default judgment. *Id.* R. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those related to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, the court may either conduct an evidentiary hearing or proceed on documentary evidence submitted by the plaintiff. *See Johnson v. Garlic Farm Truck Ctr. LLC*, No. 20–cv–03871–BLF, 2021 WL 2457154, at *2 (N.D. Cal. Jun. 16, 2021).

### III.     DISCUSSION

#### A.     Jurisdiction

##### 1.     Subject Matter Jurisdiction

The Court has diversity jurisdiction over this lawsuit under 28 U.S.C. § 1332. District courts have original jurisdiction over all civil actions where (1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and (2) the action is between citizens of a U.S. state and citizens or subjects of a foreign state. *See* 28 U.S.C. § 1332(a). Telebrands alleges that the amount in controversy exceeds $75,000. *See* Complaint, ECF No. 1 ¶ 22. Further, Telebrands alleges that Defendants are Chinese corporations and that Telebrands is a New Jersey corporation. *See id.* ¶¶ 13, 19, 21.

##### 2.     Personal Jurisdiction

The Court has personal jurisdiction over Defendants. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). California's long-arm statute is coextensive with federal due process requirements. *See Schwarzenegger v. Fred Martin*

5

*Motor Co.*, 374 F.3d 797, 800–801 (9th Cir. 2004). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014). (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Telebrands alleges that Defendants "have engaged in the unlawful marketing, soliciting and selling of their TENS units to customers" in California. *See* Complaint, ECF No. 1 ¶ 23. Further, Telebrands' claims arise out of Defendants' marketing, soliciting, and selling of their TENS units. Accordingly, the Court finds that it has specific jurisdiction over Defendants for purposes of Telebrands' claims. *See Schwarzenegger*, 374 F.3d at 802.

### B. Service of Process

When a plaintiff requests default judgment, the court must assess whether the defendant was properly served with notice of the action. *See, e.g., Solis v. Cardiografix*, No. 12–cv–01485, 2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012). Substantial compliance with Rule 4 of the Federal Rules of Civil Procedure is required. *See Travelers Cas. and Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009). Rule 4 allows service of an individual in a foreign country (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice, including using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt, unless prohibited by the foreign country's law; and (3) by other means not prohibited by international agreement, as the Court orders. *See* Fed. R. Civ. P. 4(f).

Telebrands was unable to find proper addresses for service of Defendants. *See* Stone Decl., ECF No. 44-1 ¶ 5. In February 11, 2021, Telebrands received correspondence from Henan Derun through Amazon, but all communications have ceased since February 18, 2021. *See id.* ¶¶ 5, 8. Telebrands has never received any correspondence from XNH. *See id.* ¶ 5. Without addresses, Telebrands is unable to serve Defendants according to the Hague Convention. *See id.* ¶ 12. On

April 16, 2021, Telebrands filed an ex parte application seeking leave to serve Defendants via alternative means using Amazon Seller Messaging. *See* Ex Parte Application, ECF No. 44. The Court granted Telebrands' application. *See* Order, ECF No. 46. On May 13, 2021, Telebrands filed a proof of service indicating that it had served Defendants with the verified complaint and summons using Amazon Seller Messaging. *See* ECF No. 55 ¶¶ 1–2. Further, Telebrands indicated that it attempted to serve Defendants by mail. *See id.*, Ex. C.

The Court finds that Telebrands has provided Defendants with adequate notice of service of the action under Rule 4. Telebrands sought to serve Defendants under the Hague Convention, but it was unable to find proper addresses despite substantial efforts. Telebrands then sought the Court's leave to serve Defendants by alternative means (Amazon Seller Messaging), which the Court granted. *See* Order, ECF No. 46. Telebrands served Defendants accordingly. *See* ECF No. 55 ¶¶ 1–2. There is no indication that serving Defendants via Amazon Seller Messaging is prohibited by international agreement. Further, the Court finds that serving Defendants by Amazon Seller Messaging was reasonably calculated to give notice to the Defendants. Henan Derun was even corresponding with via Amazon early in 2021 before it went silent. *See* Stone Decl., ECF No. 44-1 ¶¶ 5, 8. Accordingly, the Court finds that Telebrands served Defendants in at least substantial compliance with Rule 4.

Based on the above reasoning, the Court finds that Telebrands properly served Defendants with notice of this action.

### C. *Eitel* Factors

Courts consider the seven *Eitel* factors in determining whether to grant a motion for default judgment. *Eitel*, 782 F.2d at 1471–72. The Court will consider each factor in turn.

#### 1. Factor 1 – Prejudice to Plaintiff

Under the first *Eitel* factor, the Court considers whether Telebrands would be prejudiced unless default judgment were entered against Defendants. Telebrands argues that it would be left without recourse to recover for the harm already inflicted by Defendants if the Court did not grant it default judgment. *See* Motion, ECF No. 61 at 25. The Court agrees. *See Ridola v. Chao*, No. 16–cv–02246–BLF, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018).

Accordingly, the first *Eitel* factor weighs in favor of default judgment.

### 2. Factors 2 and 3 – Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

Under the second and third *Eitel* factors, the Court considers the merits of Telebrands' substantive claims and the sufficiency of Telebrands' Complaint. Telebrands brings claims against Defendants under five states' unfair competition laws: (1) California's Unfair Competition Law, Cal. Bus. & Prof. C. § 17200 *et seq*; (2) Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*; (3) the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq*; (4) the Delaware Deceptive Trade Practices Act, 6 Del. C. §2531 *et seq*; and (5) the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101. Defendants have not raised the issue of whether Telebrands can bring claims under multiple states' unfair competition laws simultaneously, since they have not opposed Telebrands' default judgment motion.

Telebrands alleges the same conduct by both Defendants—selling TENS units throughout the US without obtaining the requisite clearance. The Court considers the merits of each of Telebrands' claims and the sufficiency of Telebrands' complaint as to each claim in turn.

### a. California Unfair Competition Law (Cal. Bus. & Prof. C. § 17200 *et seq*)

Telebrands brings a claim under the California Unfair Competition Law ("UCL"). The California Supreme Court has clarified that the UCL, because it is "written in the disjunctive," prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts of practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *accord Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). To plead a UCL claim, a plaintiff's must allege that a defendant's conduct violates one of these three "prongs." *Id.* In addition, because a UCL claim may only be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition," Cal. Bus. & Prof. Code § 17204, a plaintiff must "demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323 (2011).

For the "unfair" prong of the UCL, the California Supreme Court has defined "unfair" as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of

8

1    one of those laws because its effects are comparable to or the same as a violation of the law, or
2    otherwise significantly threatens or harms competition." 20 Cal. 4th at 187.  Further, the California
3    Supreme Court requires that "any finding of unfairness to competitors under section 17200 be
4    tethered to some legislatively declared policy or proof of some actual or threatened impact on
5    competition." *HSBC Bank Nevada*, 691 F.3d at 1170 (quoting *Cel-Tech*, 20 Cal. 4th at 185).

6        The "unlawful" prong of the UCL "borrows violations of other laws and treats them as
7    unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*,
8    20 Cal. 4th at 180. In other words, to be "unlawful" under the UCL, Defendants' conduct must
9    violate another "borrowed" law. *HSBC Bank Nevada*, 691 F.3d at 1168. "Virtually any state,
10   federal or local law can serve as the predicate for an action under section 17200." *Id.* (quoting
11   *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002)) (alterations
12   omitted).

13       Telebrands alleges that Defendants have violated the UCL by offering TENS units in
14   competition with Telebrands and advertising and distributing them despite failing to obtain the
15   required 510(k) premarket clearance.  *See* Complaint, ECF No. 1 ¶ 59.  Telebrands alleges that it
16   will suffer irreparable harm in the form of significant customer loss and lost market share in the
17   portable, handheld TENS unit market. *See id.* ¶ 60.  Telebrands argues that Defendants' distribution
18   of uncleared TENS units contrary to FDA regulations is unfair competition in violation of the UCL.
19   *See* Motion, ECF No. 61 at 18.  Telebrands argues Defendants' conduct is at the expense of
20   competitors who play by the rules, giving Defendants an unfair competitive advantage.  *See id.*
21   Telebrands analogizes the present case to *Optivus Technology, Inc. v. Ion Beam Applications S.A.*,
22   No. CV 03–2052 SJO (VBKx), 2004 WL 5530838 (C.D. Cal. Dec. 29, 2004).  In that case, a
23   Central District of California Court found on summary judgment that it could not be said as a matter
24   of law that the plaintiff had no claim under the UCL based on allegations that a competitor marketed
25   a competing device without first obtaining approval from the FDA. *See id.* at *16.

26       The Court finds that Telebrands has adequately pled a meritorious UCL claim for unfair or
27   unlawful competition.  First, Telebrands has adequately alleged that Defendants violated FDA
28   regulations, giving them an unfair competitive advantage—which the Court finds to be sufficient

for pleading unfair or unlawful conduct. Second, Telebrands has adequately alleged economic injury in the form of lost market share and customers. *See* Complaint, ECF No. 1 ¶ 60. The *Optivus* case further supports the sufficiency of Telebrands' pleadings. *See Optivus*, 2004 WL 5530838, at *16.

Accordingly, the Court finds that the second and third *Eitel* factors favor default judgment as to Telebrands' UCL claim.

### b. Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq*)

Telebrands brings a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" *See* Fla. Sta. § 501.204(1). Further, the FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *See* Fla. Sta. § 501.202(2). The Florida Supreme Court has held that deception constitutes a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Property Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003); *Harrison v. Lee Auto Holdings, Inc.*, 295 So.3d 857, 862 (Fla. Dist. Ct. App. 2020). A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006).

Telebrands argues that it has adequately pled a deceptive trade practice under the FDUTPA. Telebrands argues Defendants have sold devices that use the same technology as Telebrands' devices and have the same health risks, without disclosing that Defendants did not seek FDA clearance for those devices. *See* Motion, ECF No. 61 at 21. Telebrands argues that Defendants' conduct has caused a significant reduction in Telebrands' market share. *See id.* at 21–22.

The Court agrees with Telebrands. Telebrands has adequately pled that Defendants engaged in a deceptive or unfair practice that caused competitive harm to Telebrands. *See* Complaint,

ECF No. 1 ¶ 59; *Rollins*, 951 So.2d at 869.

Based on the above reasoning, the Court finds that the second and third *Eitel* factors favor default judgment as to Telebrands' FDUTPA claim.

### c. Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. Ann. § 201-1 *et seq*)

Telebrands brings a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). The UTPCPL prohibits engaging in "unfair methods of competition" and "unfair or deceptive acts or practices," including "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services." 73 Pa. Stat. Ann. § 201-2(4)(ii). An act or a practice is deceptive or unfair if it has the "capacity or tendency to deceive." *Pa. Dept. of Banking v. NCAS of Del., LLC*, 995 A.2d 422, 444 (Pa. Commw. Ct. 2010) (citations omitted). In making this determination, courts consider factors including "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous, (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *See Com. Ex rel. Zimmerman v. Nickel*, 26 Pa. D. & C. 3d 115, 120–21 (C.P. 1983) (citations omitted).

Telebrands argues that it has adequately pled that Defendants violated the UTPCPL because it has alleged that Defendants advertise their TENS units as a safe and effective health product, and Defendants' products pop up on third-party marketplace websites when consumers search for Telebrands' TENS unit. *See* Motion, ECF No. 61 at 23–24. In fact, Telebrands alleges, Defendants' TENS units are not as safe and effective as Defendants' marketing would suggest, since Defendants did not get the proper FDA clearance before bringing them to market. *See id.* at 24. Telebrands argues that this constitutes deceptive or unfair conduct, since it creates a substantial likelihood that consumers will be misled. *See id.* Further, Telebrands argues that Defendants' conduct negatively impacted Telebrands' ability to sell its own TENS units. *See id.*

11

1      The Court agrees with Telebrands. Telebrands has adequately alleged a UTPCPL violation, particularly given the UTPCPL provision enumerating that "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services" is an unfair or deceptive act or practice. 73 Pa. Stat. Ann. § 201-2(4)(ii). Further, the factors courts use to determine whether a practice is unfair or deceptive supports the merits of Telebrands' UTPCPL claim. *See Zimmerman*, 26 Pa. D. & C. 3d at 120–21. Telebrands has adequately alleged that Defendants' conduct "offends public policy" as established by FDA regulations; that Defendants' conduct is plausibly "unscrupulous;" and that it causes "substantial injury" to Telebrands—a competitor of Defendants. *See id.*

Based on the above reasoning, the Court finds that the second and third *Eitel* factors weigh in favor of default judgment as to Telebrands' UTPCPL claim.

### d. Delaware Deceptive Trade Practices Act (6 Del. C. § 2531 *et seq*)

Telebrands brings a claim under the Delaware Deceptive Trade Practices Act ("DTPA"). Similar to the UTPCPL, the DTPA prohibits engaging in a "deceptive trade practice . . . in the course of a business, vocation, or occupation," including by causing "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services[.]" 6 Del.C. § 2532(a)(2). "In order to prevail [on a DTPA claim], a complainant need not prove competition between the parties or actual confusion or misunderstanding." 6 Del.C. § 2532(b). The DTPA is "remedial in nature and liberally construed." *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F.Supp.2d 424, 428 (D. Del. Mar. 31, 2003) (quoting *State ex rel. Brady v. Preferred Flourish Network, Inc.*, 791 A.2d 8, 20 (Del. Ch. 2001)).

Telebrands argues that courts consider the DTPA coextensive with common law unfair business practice principles, for which the Delaware Court of Chancery has held "[t]he essential element separating unfair competition from legitimate market participation… is an unfair action on the part of defendant by which he prevents plaintiff from legitimately earning revenue." *See* Motion, ECF No. 61 at 23 (quoting *Ethypharm S.A. v. Abbott Labs.*, 598 F.Supp.2d 611, 618 (D. Del. 2009)). Further, Telebrands argues that it has adequately pled a DTPA violation by alleging that Defendants "leapfrogged" FDA regulations, thereby securing a significant share of the TENS unit market to

12

1  Telebrands' detriment. *See id.* at 24.

2  The Court agrees with Telebrands. Telebrands has plausibly alleged that Defendants engaged in "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services" by selling TENS units without FDA clearance. 6 Del.C. § 2532(a)(2); *see, e.g.*, Complaint, ECF No. 1 ¶ 51. Further, Telebrands has plausibly alleged that it was damaged by Defendants' conduct. *See* Complaint, ECF No. 1 ¶¶ 49–53.

Accordingly, the Court finds that the second and third *Eitel* factors weigh in favor of default judgment as to Telebrands' DTPA claim.

### e. Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101)

Telebrands brings a claim under the Colorado Consumer Protection Act ("CCPA"). The CCPA prohibits a person from engaging in a deceptive trade practice in the course of the person's business, vocation, or occupation. *See* Colo. Rev. Stat. § 6-1-105. To adequately plead a CCPA claim, a plaintiff must allege (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's good, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *See Rhino Linings USA, Inc. v. Rocky Mtn. Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

For the first and second elements of a CCPA claim, Telebrands points to a provision of the CCPA enumerating that deceptive trade practices include where a person "[r]efuses or fails to obtain all governmental licenses or permits required to perform the services or to sell the goods, food, services, or property as agreed to or contracted for with a consumer." Colo. Rev. Stat. § 6-1-105(1)(z). By alleging that Defendants sold TENS units within the course of their business without the requisite FDA clearance, Telebrands argues it has adequately pled the first and second elements of a CCPA claim. *See* Motion, ECF No. 61 at 19. Given the clear language of the CCPA provision Telebrands cites, the Court agrees.

For the third element of a CCPA claim, Telebrands argues that Defendants' conduct

significantly impacted the public because unregulated TENS units were offered for sale throughout the United States. *See* Motion, ECF No. 61 at 19. The Court agrees that Telebrands has adequately pled the third element of a CCPA claim. *See, e.g., Newman-Green, Inc. v. Alfonzo-Larrain*, 590 F.Supp. 1083, 1086 (N.D. Ill. 1984) ("plaintiff must show defendant has engaged in deceptive practices in promoting its goods or services to its market in general," as opposed to "a single course of deceptive conduct by a defendant toward a plaintiff").

For the fourth and fifth elements of a CCPA claim, Telebrands argues that Defendants' conduct caused Telebrands to suffer an injury in fact. Telebrands argues that it has adequately alleged that it has suffered competitive harm based on Defendants' conduct. Telebrands argues that Defendants' decision to "cut the line by ignoring FDA regulations" led to a precipitous loss in Telebrands' customers and market share for its TENS unit products. *See* Motion, ECF No. 61 at 20. The Court agrees. Telebrands has adequately alleged an injury-in-fact resulting from Defendants' alleged conduct. *See* Complaint, ECF No. 1 ¶¶ 49–53.

Based on the above reasoning, the Court finds that Telebrands has adequately alleged the elements of a CCPA claim against Defendants. Accordingly, the second and third *Eitel* factors weigh in favor of a default judgment.

### 3. Factor 4 – Sum of Money at Stake

Under the fourth *Eitel* factor, the Court considers the sum of money at stake in relation to the seriousness of Defendants' conduct. Telebrands requests a permanent injunction preventing Defendants and all those acting in concert or participation with Defendants from "directly or indirectly[] continu[ing] to unlawfully distribute Defendants' TENS units either through third-party marketplaces such as Amazon, by telephone, in retail stores or through any other medium within the United States, unless and until Defendants secure the requisite clearance from the FDA pursuant to Section 510(k) of the Food Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq*." *See* Proposed Order, ECF No. 61-2 ¶ 9. Telebrands argues that it has tailored its request for injunctive relief to Defendants' specific misconduct, so default judgment is appropriate. *See* Motion, ECF No. 61 at 25 (citing *Bittorrent, Inc. v. Bittorrent Mktg. GmbH*, No. 12–cv–02525–BLF, 2014 WL 5773197, at *10 (N.D. Cal. Nov. 5, 2014). The Court agrees. The relief Telebrands requests—an injunction

1 on selling TENS units without FDA clearance—is tailored to the alleged conduct—selling TENS
2 units without FDA clearance.
3       Accordingly, the fourth *Eitel* factor weighs in favor of default judgment.

### 4. Factor 5 – Possibility of a Dispute Concerning Material Facts

Under the fifth *Eitel* factor, the Court considers the possibility of a dispute concerning material facts. Telebrands argues that because Defendants have not answered or appeared in this matter, there is unlikely to be a dispute concerning material facts. *See* Motion, ECF No. 61 at 26. The Court agrees, particularly since Telebrands pleads plausible claims for violation of various states' unfair competition laws and all liability-related allegations are deemed true.

Accordingly, the fifth *Eitel* factor weighs in favor of default judgment.

### 5. Factor 6 – Whether Default was Due to Excusable Neglect

Under the sixth *Eitel* factor, the Court considers whether Defendants' default was due to excusable neglect. Telebrands argues that Defendants' default is not due to excusable neglect, since Telebrands has sent them numerous messages through Amazon Seller Messaging that Defendants have ignored. *See* Motion, ECF No. 61 at 26. The Court agrees. Based on Telebrands' extensive efforts to contact Defendants that have received no response, the Court is satisfied that Defendants' default in this case is not due to excusable neglect. Such is particularly true for Henan Derun, which initially corresponded with Telebrands before going silent without explanation. *See* Stone Decl., ECF No. 44-1 ¶¶ 5, 8.

Accordingly, the sixth *Eitel* factor weighs in favor of default judgment.

### 6. Factor 7 – Policy Favoring Decisions on the Merits

Under the seventh *Eitel* factor, the Court considers the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Telebrands argues that Defendants' failure to answer Telebrands' Complaint makes resolution on the merits impossible, so this factor favors default judgment. *See* Motion, ECF No. 61 at 26. The Court agrees. Defendants' failure to participate in this litigation makes a decision on the merits impossible, and default judgment is Telebrands' only recourse. *See United States v. Roof Guard Roofing Co. Inc.*, No. 17–cv–02592–NC, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly

1  adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

2  Accordingly, the seventh *Eitel* factor weighs in favor of default judgment.

### D. Requested Relief

Telebrands argues that it is entitled to a permanent injunction preventing Defendants from selling TENS units without FDA clearance anywhere in the United States. *See* Motion, ECF No. 61 at 26–27. In determining whether to grant permanent injunctive relief, courts consider whether a plaintiff has demonstrated: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Telebrands argues that each of the state statutes under which it brings its claims provide for equitable relief, including injunctions. *See* Cal. Bus. & Prof. C. § 17203; Colo. Rev. Stat. § 6-1-110; Fla. Stat. § 501.211; 73 Pa. Stat. Ann § 201-9.2; 6 Del.C. § 2533. Further, Telebrands argues that a permanent injunction is warranted here under the equity factors. Telebrands argues that it has established irreparable harm, since the market for TENS units is an "elastic market which has a highly specific consumer demographic, which Telebrands simply will not be able to retake." *See* Motion, ECF No. 61 at 26. Telebrands further argues that the "loss and the effective diminution of Telebrands' brand name and recognition" cannot be addressed through monetary damages. *See id.* at 27. Additionally, Telebrands argues that the balance of hardships weighs in its favor, since a permanent injunction will merely require Defendants to go through the same regulatory process that Telebrands and other sellers went through. *See id.* And finally, Telebrands argues that the public interest would be served by an injunction, since consumer safety is at issue. *See id.*

The Court agrees with Telebrands. Telebrands has adequately shown that a permanent injunction is authorized by the state statutes under which Telebrands brings its claims. Further, Telebrands has established that the equity factors support issuing the requested permanent injunction. Telebrands adequately alleges that the competitive harm caused by Defendants' conduct is irreparable and will not be addressed by monetary damages. *See* Complaint, ECF No. 1 ¶¶ 49–53.

Further, the Court agrees that the balance of hardships and the public interest favor the requested permanent injunction, particularly since it allows Defendants to sell TENS units once they gain the proper FDA clearance. Additionally, the Court notes that a nationwide injunction is appropriate. *See Allergan, Inc. v. Athena Cosmetics, Inc.*, No. SACV 07–1316 JVS (RNBx), 2013 WL 12142655, at *4 (C.D. Cal. Mar. 6, 2013); *RLH Indus., Inc. v. SBC Commc'ns, Inc.*, 133 Cal.App.4th 1277, 1291–93 (2005).

Accordingly, the Court GRANTS Telebrands' requested permanent injunction.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Telebrands' motion for default judgment is GRANTED;
2. The Court will issue a separate injunction; and
3. Notice of this Order and Judgment may be served on Defendants by sending copies via Amazon Seller Messaging.

Dated: April 8, 2022

_____
BETH LABSON FREEMAN
United States District Judge